[No. A084178. First Dist., Div. Five. July 28, 1999.]

In re MARCUS G., a Person Coming Under the Juvenile Court Law.
CITY AND COUNTY OF SAN FRANCISCO DEPARTMENT OF
HUMAN SERVICES, Plaintiff and Respondent, v.
MARCUS G., Defendant and Appellant.

**COUNSEL**

Seth L. Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Louise H. Renne, City Attorney, Dennis Aftergut, Chief Assistant City Attorney, and Ellen Forman, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

**JONES, P. J.**—In this appeal we are called upon to examine the juvenile court's jurisdiction when a minor who has previously been declared a dependent of the juvenile court commits an act that brings him within the juvenile delinquency system. We conclude that the juvenile court erred in dismissing the dependency proceedings, and we remand for further proceedings to determine what status is appropriate for the minor.

### FACTUAL AND PROCEDURAL BACKGROUND

Marcus G. was born September 5, 1982, and a dependency petition was sustained by the San Mateo County Juvenile Court in 1983 when he was four months old. The matter was transferred to the San Francisco Juvenile Court, as Marcus's mother resided in San Francisco, and Marcus was there declared a dependent of the court. Marcus's mother is developmentally disabled, and his father is deceased. Marcus was placed with his maternal grandmother, and she was appointed his legal guardian in 1985. However, in 1991 the grandmother asked that Marcus be moved out of her home, as Marcus no longer wanted to live with her. Marcus was then removed from his grandmother's home and placed in long-term foster care. He continued to reside with his foster mother in Vallejo until 1997.

For the six-month status review hearing scheduled for January 1998, the juvenile court received a report that Marcus had been arrested in August 1997 for robbery and had been held in Solano County Juvenile Hall. He was then transferred to the Youth Guidance Center in San Francisco, and in October 1997, he was declared a ward of the court. The San Francisco Department of Human Services (DHS) moved to dismiss the dependency petition and jurisdiction on the ground that a minor cannot simultaneously be both a dependent and a ward of the juvenile court.

Marcus, through counsel, opposed the motion, arguing that termination of the dependency would not be in his best interests.[1] The court denied the motion, commenting, "I just don't want to let this kid be caught between the

---

[1]Marcus argued in part as follows: "In reality, the only 'family' that Marcus has is his foster mother and his foster brothers who live there, and to whom he is attached. So, if Marcus does well in his probation program, and is 'eligible' to return home at the age of

cracks after his wardship is dismissed . . . ." The court continued the matter for the next status review hearing.

The social worker's report prepared for that hearing indicated that Marcus was currently placed in a probation program in Gilroy and that when Marcus completes that program the plan of the probation department is to reunify him with his foster mother in Vallejo. The social worker recommended terminating dependency jurisdiction, reasoning as follows: "As the court is already aware, a minor cannot be a 300 dependent and a 602 ward of the court at the same time. There is no need to keep the minor as a 300 dependent because he is already under the care and custody of the probation department and services will be duplicated. If the purpose of the court in continuing the 300 dependency of this minor is to assure that he has a place to go after he is dismissed as a 602 ward of the court, the minor's attorney can always petition the court to reinstate him as a 300 dependent. However according to his Probation Officer, minors are seldom dismissed as a 602 ward of the court."

The DHS then filed a petition pursuant to section 388 of the Welfare and Institutions Code, again seeking dismissal of the dependency proceedings. The court granted the petition and dismissed the dependency proceedings. Marcus now appeals that ruling.[2]

DISCUSSION

I. *Authority of Referee*

At the outset, we dispose of appellant's contention that the referee's order is ineffective. Section 249 of the Welfare and Institutions Code[3] provides that "[n]o order of a referee removing a minor from his home shall become effective until expressly approved by a judge of the juvenile court." Appellant contends that the order of the referee here dismissing the dependency petition qualifies as an order "removing a minor from his home" and that the order is therefore invalid as it was not approved by a judge.

sixteen (or even seventeen), where will he go? He should be allowed to return to the home of his foster mother, . . . however, hers is a . . . foster home licensed by the [DHS], not a probation authorized placement."

[2]Respondent DHS has attached to its brief a declaration of Marcus's probation officer concerning Marcus's subsequent history on probation. Appellant asks this court to strike the attachment, as the declaration was neither before the juvenile court below nor properly presented to this court by an appropriate motion to take evidence. We agree the attachment is improper, and we order it stricken.

[3]All further statutory references are to the Welfare and Institutions Code. All references to a rule are to the California Rules of Court.

Appellant is mistaken. Except for the orders described in section 249 all orders of a referee are effective immediately, subject to rehearing by a juvenile court judge. (§ 250; rule 1417(a).) The orders described in section 249 are orders removing the minor from the physical custody of his parents or guardian (rule 1417(b)(1)), e.g., a dispositional order (§ 361). Such an order was made in 1983 when Marcus was removed from his mother and placed with his grandmother and again in 1991 when Marcus was removed from his guardian-grandmother and placed in foster care. The order terminating dependency jurisdiction did not remove Marcus from his foster home; it was the dispositional order within the wardship proceeding that did that, as appellant acknowledges in his closing brief. (See *In re David G.* (1979) 93 Cal.App.3d 247, 255 [155 Cal.Rptr. 500].)

## II. *Dual Jurisdiction*

■■■ Pursuant to section 300, any minor who has been abused or neglected as therein described comes within the jurisdiction of the juvenile court as a dependent child of the court. And pursuant to sections 601 and 602 any minor who commits a crime or a status offense comes within the jurisdiction of the juvenile court as a ward of the court. When, as here, a minor qualifies as both a dependent and a ward of the juvenile court, the Legislature has declared that a minor cannot simultaneously be both. (§ 241.1; see *In re Donald S.* (1988) 206 Cal.App.3d 134 [253 Cal.Rptr. 274].)

In section 241.1 the Legislature has set forth a procedure for handling cases with potential dual jurisdiction.[4] First, the probation department and the welfare department of the county must assess the minor, pursuant to a

[4]Section 241.1 currently provides: "(a) Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the county welfare department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor. Any other juvenile court having jurisdiction over the minor shall receive notice from the court, within five calendar days, of the presentation of the recommendations of the departments. The notice shall include the name of the judge to whom, or the courtroom to which, the recommendations were presented.

"(b) The probation department and the welfare department in each county shall jointly develop a written protocol to ensure appropriate local coordination in the assessment of a minor described in subdivision (a), and the development of recommendations by these departments for consideration by the juvenile court. These protocols shall require, which requirements shall not be limited to, consideration of the nature of the referral, the age of the minor, the prior record of the minor's parents for child abuse, the prior record of the minor for out-of-control or delinquent behavior, the parents' cooperation with the minor's school, the

jointly developed written protocol, to determine "which status will serve the best interests of the minor and the protection of society." Then the recommendations of both departments must be presented to the juvenile court for its determination of the status appropriate for the minor. (§ 241.1, subd. (a).) In 1998, after the proceeding held here, the Legislature amended section 241.1 to require that when another juvenile court has already acquired jurisdiction over the minor, that court must receive notice of the presentation of the recommendations of the probation and welfare departments. (§ 241.1, subd. (a).)

Section 241.1, subdivision (a) requires the recommendations of the probation and welfare departments to be submitted to the juvenile court "with the petition that is filed on behalf of the minor." We construe that language to mean that the assessment of which status would be appropriate for the minor is to accompany the *later petition*, i.e., the petition that creates the potential for dual jurisdiction. Likewise, the determination of the appropriate status is to be made by the juvenile court that is acting upon that second petition. The juvenile court that has already acted upon an earlier petition so as to bring the minor within the jurisdiction of the juvenile court must now receive notice of the second proceeding, but it is the juvenile court facing the problem of dual jurisdiction that must determine whether the minor should be treated as a dependent child or a delinquent minor.

In the present case, the record does not show that the procedures set forth in section 241.1 were followed. Marcus was a dependent of the San Francisco Juvenile Court based upon a dependency petition filed in 1983. The potential for dual jurisdiction was raised by the delinquency petition filed in 1997.[5] The assessment and determination of which status is appropriate for Marcus should have been made by the juvenile court within the delinquency proceeding, not in the dependency proceeding. Because the record in the

minor's functioning at school, the nature of the minor's home environment, and the records of other agencies which have been involved with the minor and his or her family. The protocols also shall contain provisions for resolution of disagreements between the probation and welfare departments regarding the need for dependency or ward status and provisions for determining the circumstances under which a new petition should be filed to change the minor's status.

"(c) Nothing in this section shall be construed to authorize the filing of a petition or petitions, or the entry of an order by the juvenile court, to make a minor simultaneously both a dependent child and a ward of the court."

[5] In his briefs, Marcus asserts that the wardship was established in Solano County Juvenile Court. The record, however, does not support that assertion. The record suggests that although Marcus was arrested and detained in Solano County, he was transferred to San Francisco and there made a ward of the court. A delinquency petition may be filed in the county of the minor's residence or in the county in which the acts occurred. (§ 651.) Although Marcus was living in a foster home in Vallejo, he was legally in the custody of the San Francisco DHS and, accordingly, was legally a resident of San Francisco. (§ 380.)

delinquency proceeding is not before us, we have no information on whether the procedures of section 241.1 were followed. We can be certain only that Marcus was declared a ward of the court within that delinquency proceeding; we do not know that an assessment was made that wardship status rather than dependency status is more appropriate for him.

III. *Termination of Dependency*

Section 388 permits any person to petition the court for modification of a prior order or for termination of dependency jurisdiction, and the court must conduct a hearing on the petition if "it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction . . . ." Once that prima facie showing has been made and a hearing is held, the court may dismiss the dependency petition if the court finds that "the interests of justice and the welfare of the minor require the dismissal" and that the parents no longer need treatment. (§ 390.) **(3)** On appeal, we determine whether substantial evidence supports the order terminating dependency jurisdiction. (*In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1500 [285 Cal.Rptr. 374], disapproved on another point in *In re Chantal S.* (1996) 13 Cal.4th 196, 204 [51 Cal.Rptr.2d 866, 913 P.2d 1075]; see also *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1707 [11 Cal.Rptr.2d 290].)

 In the present case, the juvenile court concluded that termination of the dependency would be in the best interests of the minor based upon the social worker's report that the probation officer plans to return Marcus to his foster mother upon termination of the wardship status. The court found that "the best services that could be given to this child will be under the auspices of the 602 system." And the court commented that "if and when he is dismissed from that system, we can reestablish him as a dependent of the court . . . ."

We conclude, however, that under the circumstances here the evidence is insufficient to support the order dismissing the dependency petition. Even if we were to conclude that the section 388 petition filed by DHS properly placed the issue of dual jurisdiction before the juvenile court within the dependency proceeding, the juvenile court was not presented with a joint assessment by the probation and welfare departments as required by section 241.1. At most the court was presented with a report and declaration by the social worker outlining the duplicative services that would be provided if dependency jurisdiction were maintained. The social worker lamented, "The child welfare workers already have excessive caseloads. It appears to be a waste of our resources to have two departments covering the same duties for

one child." The court was not presented with an assessment in light of the factors specified in section 241.1, e.g., the nature of the minor's conduct, the minor's prior out-of-control or delinquent behavior, his functioning at school, and his home environment. (§ 241.1, subd. (b).)

As appellant points out, the record throughout the years of dependency status reviews indicates that Marcus suffers from hyperactivity, learning disabilities, attention deficit disorder, and emotional problems. He had been taking psychotropic medication and had been under the care of a psychiatrist, although he had stopped participating in individual therapy in 1996. He was a special education student and had been attending a special treatment school for students with emotional problems. Nothing in the social worker's report indicated how the probation department would address those problems. At the same time, of course, Marcus committed a serious crime and was in possession of a gun. It may well be that the firmer control and closer supervision of a probation officer are more appropriate for Marcus than the social services that could be provided by the welfare department. The individual circumstances unique to Marcus's case must be assessed in accordance with the statutory mandate of section 241.1.

The social worker's concern with the duplication of efforts by the probation and welfare departments is, of course, a legitimate concern, but it is one that has been resolved by the Legislature through the procedures of section 241.1. The Legislature obviously intended that the decision regarding a minor's status would be one based upon more than the need to eliminate duplicate services. The statutory directive requires assessment of both the needs of the minor and the need of society for protection. We remand the matter to the juvenile court for purposes of coordinating this matter with the wardship proceeding so that a determination of the minor's status can be made after the assessment called for by section 241.1.

We reject appellant's contention that the juvenile court should be directed to maintain concurrent dependency jurisdiction or, at most, to suspend dependency jurisdiction during Marcus's wardship. Such dual status would obviously violate both the spirit and the letter of section 241.1, which calls for selection of a single status for the minor.

Appellant's reliance on *In re Bettye K.* (1991) 234 Cal.App.3d 143, 150-151 [285 Cal.Rptr. 633], is misplaced, as that case did not involve dual jurisdiction. The minor there had been charged under section 601 with being out of parental control, and her father argued that the petition should have been brought under section 300 because the "real basis" for the petition was the father's own unfitness. The court rejected the argument, noting that the

statutes are not mutually exclusive, and that a particular set of facts might support jurisdiction under more than one statute. (234 Cal.App.3d at p. 151, fn. 8.) Nothing in *In re Bettye K.* authorizes maintaining a minor as both a dependent and a ward of the court simultaneously.

Appellant asserts that continuing the dependency jurisdiction during the wardship is necessary because there is no one to reinstitute a dependency proceeding upon termination of the wardship—that DHS would have no reason to act on its own; the probation officer would be discouraged by the extra paperwork and court time; and Marcus's court-appointed attorney would no longer have any recognized relationship with the minor. Appellant's point is not persuasive. First, the written protocol required by section 241.1 must include a procedure for determining when a new petition should be filed to change the minor's status. (§ 241.1, subd. (b).) In any event, we observe that a formal petition to the court is not required to reestablish a minor as a dependent child. Pursuant to section 329, any person may apply to the social worker for an investigation and assessment of whether to commence dependency proceedings. Only if the social worker fails to file a petition must the applicant turn to the juvenile court for an order to commence proceedings. (§ 331.)

## IV. *Constitutionality*

Marcus asserts that the termination of his dependency denied him equal protection of the laws in that wards of the court with intact families can be returned home if their juvenile probation ends before they reach majority, while wards of the court such as Marcus, who have previously been declared dependents of the court, have no homes to return to and are therefore likely to be kept on probation until they reach the age of majority.

Because we have concluded that the order terminating the dependency proceedings must be reversed, we need not reach that constitutional question. We observe, however, that appellant's argument is premature. Marcus has not shown that he will be or has been held in wardship longer than delinquent minors with intact families. He merely hypothesizes that he may be.[6]

---

[6]Appellant's brief states: "If the minor becomes eligible to have [wardship] terminated early, *it is unlikely*, and, realistically, it cannot be counted upon, that a new dependency petition will be filed without a judicial mandate. *There is no assurance* that the minor won't simply be 'warehoused' on probation until he reaches the age of majority." "In this case, to accommodate the system's needs (rather than the child's), *the minor is likely* to remain on juvenile probation until he reaches the age of majority, with probation restrictions, requirements, and stigma, beyond the period of any other, similarly situated child." "*It is possible*

DISPOSITION

The order dismissing the dependency petition is reversed, and the matter is remanded to the juvenile court with directions to determine whether the procedures set forth in section 241.1 were followed such that an assessment was made within the delinquency proceeding that wardship status, rather than dependency status, is appropriate for the minor. If the court determines that such an assessment was properly made within the delinquency proceeding, then the court shall reinstate its order dismissing the dependency petition. If, however, the court determines that no assessment was made in accordance with section 241.1, then the court shall direct the probation department and the welfare department to comply with the procedures of section 241.1, and the court shall determine whether the minor should be treated as a dependent child or a delinquent minor.

Haning, J., and Stevens, J., concurred.

---

. . . that the minor's probation could be terminated prior to his becoming eighteen years of age. If this occurs, the DSS will become his only guardian." "Without the court's maintaining jurisdiction, *it would be unlikely* that the Welfare Department would file a petition on its own to take jurisdiction over the minor." "The *likelihood* that the minor would remain warehoused on probation for a time longer than he would ordinarily be is great because of the bureaucratic requir[e]ments necessary to refile an action." (Italics added.)