Filed 4/7/14  In re K.D. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>K.D.,<br><br>    Defendant and Appellant. | A138531<br><br>(Alameda County<br>Super. Ct. No. OJ1201935) |

Defendant K.D., a minor, appeals the juvenile court's dispositional order terminating her dependency status, declaring her a ward of the court, and placing her in an out-of-state facility pursuant to Welfare and Institutions Code section 241.1.[1] Defendant contends the trial court abused its discretion in several respects and that her constitutional and statutory rights were violated because a jurisdictional hearing on the section 602 wardship petition was held before a section 241.1 assessment was completed. We affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was arrested and taken to juvenile hall on July 27, 2012, after running away from her foster placement and stealing the foster parent's phone and another child's belongings. She was taken into protective custody after she was released from juvenile hall without a home to go to. Defendant's paternal grandmother, who had been her care provider for 12 years, refused to take her back due to various behaviors including theft, running away, drug use and prostitution. On that same day, Alameda County Social Services filed a dependency petition pursuant to section 300 alleging defendant's parents were unable to protect or provide for her support. Defendant was then 16 years old. Her father was incarcerated and mother's whereabouts were unknown.

According to the jurisdiction/disposition report filed August 10, 2012, paternal grandmother reported defendant "had been doing well" until recently. However, at the beginning of the year, defendant ran away twice, for a week on each occasion. The second time, she "came back intoxicated with methamphetamines and 'babbling.' " Grandmother enrolled defendant in the Thunder Road substance treatment program in March 2012, but she went AWOL from the program in May. Defendant acknowledged to the social worker she had been sexually exploited for a two-week period ending on July 24, 2012, when "her pimp left her in Stockton." Defendant asserted prostitution "was only a temporary means to make money while she was AWOL." She also acknowledged she smoked marijuana every day and had used methamphetamines.

On August 13, 2012, the juvenile court found the dependency petition allegations true and declared defendant a dependent. The court ordered a planned permanent living arrangement with a foster parent, suitable group home, or residential facility.

On August 21, the juvenile court granted the social worker's application for a protective custody warrant after the foster parent reported defendant had absconded from her placement. The social worker filed another application for a protective custody warrant on September 25 after receiving a call from the caregiver that defendant did not return from a sleepover at a friend's house.

In a status review report filed on January 22, 2013, the social worker reported defendant had been held at Juvenile Hall in San Joaquin County since January 10, facing charges on loitering with intent to commit prostitution. The social worker noted defendant "has not been compliant with her case plan, in that she was AWOL and not attending school." Also, the social worker reported there had been two incidents during the reporting period where defendant had been contacted by police for prostitution. The social worker expressed concern for defendant's welfare "given the choices she has made regarding leaving placement and not attending school" and further opining "she places herself in grave danger [by] . . . participating in criminal activity that makes her very vulnerable to assault or worse."

On February 13, the San Francisco County District Attorney's Office filed a wardship petition pursuant to section 602, subdivision (a), alleging defendant solicited and agreed to engage in prostitution in violation of Penal Code section 647, subdivision (b), and resisted a peace officer, in violation of Penal Code section 148, subdivision (a)(1). The detention report prepared in connection with the wardship petition described the circumstances of the offense: At approximately 3:45 a.m. on February 13, 2013, a plain clothes San Francisco police officer assigned to the prostitution detail and operating an unmarked patrol car observed defendant standing at the intersection of 20th Street and Capp Street. Defendant waved at the officer as he approached. The officer pulled over and negotiated to have sex with defendant for $60, recording the transaction on a digital audio device. Defendant reached into the vehicle and attempted to touch the officer in the groin area. The officer grabbed defendant's hand and told her she was going to be arrested. Defendant twisted her arm, broke free of the officer's grasp and ran off. After the officer requested assistance, defendant was located west of 20th Street hiding between two parked cars.

On February 14, defendant admitted as true the allegation of resisting a peace officer, and the prostitution allegation was dismissed. Thereafter, the San Francisco Juvenile Court transferred defendant's section 602 matter to Alameda County for

3

disposition. On February 20, the Alameda County Juvenile Court accepted the transfer and ordered defendant detained at juvenile hall until further order of the court.

On March 8, 2013, the Alameda County Social Services Agency Director and the Alameda County Chief Probation Officer filed a joint report pursuant to section 241.1 to assess and recommend whether defendant should be a declared a ward or remain a dependent of the court.[2] The report noted defendant had been a dependent since August 2012, after her grandmother could no longer care for her due to her out-of-control behavior. It stated: "This behavior included running away, theft, use of drugs, and prostitution. Since becoming a dependent, she has been chronically absent without approval for leave (AWOL) from placements. [Defendant] is pregnant and her child is due in August 2013. [Defendant] admitted to smoking cigarettes and marijuana daily. She also has used methamphetamines and ecstasy in the past. [¶] Both the undersigned and the Child Welfare Worker agree that it is in the minor's best interest to be adjudged a ward of the Court. . . . [Defendant] could benefit from being placed at a program in a more remote location that would dissuade her from AWOLing. A Guidance Clinic evaluation would also be beneficial. . . . [T]he undersigned referred [defendant] to Bay Area Women Against Rape (BAWAR). Hopefully with their help, [defendant] can get the help she needs to change her life. It is important that she understands the potential harm that could come to her child should she continue on this destructive path."

On March 13, 2013, the juvenile court held a status determination hearing under section 241.1. The court dismissed defendant's dependency and adjudged her a ward of court.

---

[2] Section 241.1 provides in part that "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor." (§ 241.1, subd. (a).)

4

In a placement review filed on April 5, 2013, the probation officer reported defendant had terminated her pregnancy. The officer also reported defendant was interviewed and found appropriate for placement at the Mingus Mountain Academy in Arizona (Mingus Mountain), which "does well with the girls who are sexually exploited and who are AWOL risks." The probation officer added, "The minor has a history from three different counties for prostitution and had run from numerous foster care placements. A remote facility would be best for [her]." On April 11, 2013, the juvenile court ordered defendant placed at the Mingus Mountain. On April 30, 2013, defendant filed a timely notice of appeal.

## DISCUSSION

### A. *Applicable Legal Standards*

The law governing minors with cases in both the dependency system and delinquency system was summarized in *In re Joey G.* (2012) 206 Cal.App.4th 343 (*Joey G.*): "Under section 300, a child who is neglected or abused falls within the juvenile court's protective jurisdiction as a ' "dependent child of the court." ' [Citation.] As a dependent, the juvenile court may remove the minor from the home, or place the minor in alternative care that meets his or her needs for custody, care and guidance. [Citation.] Alternatively, the juvenile court may take jurisdiction over a minor as a ' "ward of the court" when the child is habitually disobedient or truant' under section 601 or commits a crime under section 602. [Citation.] When a minor is adjudged a ward of the court, the minor is subject to more-restrictive placements because of his or her criminal conduct and the court may commit the minor to a juvenile home, ranch, camp, forestry camp, or juvenile hall. [Citation.] The Legislature has declared that a minor cannot simultaneously be both a dependent and a ward of the juvenile court." (*Id.* at p. 347.)

"Section 241.1 sets forth the procedure for handling cases with dual jurisdiction in which a minor is both a dependent under section 300 and a ward under sections 601 or 602. It requires the probation department and the welfare department to jointly develop a written protocol to determine which status will best serve the interests of the minor and the protection of society. Once completed, the report is presented to the juvenile court

5

for a determination of the appropriate status for the minor. [Citation.] The joint assessment report must contain the joint recommendation of the probation and child welfare departments and also include (1) a description of the nature of the referral, (2) the age of the child, (3) the history of any physical, sexual or emotional abuse of the child, (4) the prior record of the child's parents for abuse of this or any other child, (5) the prior record of the child for out-of-control or delinquent behavior, (6) the parents' cooperation with the child's school, (7) the child's functioning at school, (8) the nature of the child's home environment, (9) the history of involvement of any agencies or professionals with the child and his or her family, (10) any services or community agencies that are available to assist the child and his or her family, (11) a statement by any counsel currently representing the child, and (12) a statement by any court-appointed special advocate (CASA) volunteer currently appointed for the child." (*Joey G., supra,* 206 Cal.App.4th at pp. 347–348.)

A trial court's determination under section 241.1, whether to retain section 300 dependency status or declare section 601 or 602 wardship, is reviewed for abuse of discretion. (*Joey G., supra,* 206 Cal.App.4th at p. 346.) "To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice." (*Ibid.*) Moreover, " ' "[w]e must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' [Citation.]" (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.)

**B.**  *Analysis*

Judged under the above standards, the juvenile court's decision to terminate dependency and declare wardship did not constitute an abuse of discretion. On the contrary, the court's decision was amply justified based on defendant's admitted use of drugs on a daily basis, her documented involvement in street-corner prostitution, and her habitual abandonment of court-ordered foster home placements, all of which constituted both a danger to herself and created a potential public nuisance.

6

Defendant nevertheless asserts the juvenile court's decision should be reversed because the section 241.1 report did not meet statutory requirements and did not provide adequate information for the court to make a well-reasoned decision to treat the minor as a ward rather than a dependent.

Defendant did not object in the juvenile court that the section 241.1 report was flawed and could not support an adjudication of wardship. Accordingly, any objection to the sufficiency of the section 241.1 report has been waived. (See, e.g., *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411–412 [failure to object to the adequacy of assessment mandated by section 366.21 at the 12-month review hearing waived the right to raise the issue on appeal].) In any case, the section 241.1 report addressed all matters mandated by the statute, namely, "consideration of the nature of the referral, the age of the minor, the prior record of the minor's parents for child abuse, the prior record of the minor for out-of-control or delinquent behavior, the parents' cooperation with the minor's school, the minor's functioning at school, the nature of the minor's home environment, and the records of other agencies that have been involved with the minor and his or her family." (§ 241.1, subd. (b)(2).)

Defendant contends the report failed to mention matters not specifically required under section 241.1 but listed in California Rules of Court, rule 5.512 (hereafter rule 5.512). In this regard, defendant asserts the section 241.1 report "completely failed to mention any services or community agencies that were available to assist [defendant] and her family." This assertion is belied by the record. The section 241.1 report states, "[Defendant] could benefit from being placed at a program in a more remote location that would dissuade her from AWOLing. A Guidance Clinic evaluation could also be beneficial. On March 6, 2013, the undersigned referred [defendant] to Bay Area Women Against Rape." Also, whereas defendant complains the section 241.1 report did not include a statement by her dependency counsel, as required under rule 5.512(d)(11), the court received a separate report from dependency counsel, and at the section 241.1 hearing the court stated it read counsel's report "very, very carefully . . . a couple times now." Thus, any error in failing to include dependency counsel's statement in the

7

section 241.1 report was harmless because the trial court read counsel's statement and considered it. (See *In re Celine R.* (2003) 31 Cal.4th 45, 60 [holding that harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 applies in dependency matters].) Furthermore, in addition to the section 241.1 report and dependency counsel's report, the juvenile court also reviewed the probation disposition report, the minute orders from prior hearings and other materials in the record. In sum, the juvenile court had ample information on which to base its decision to treat defendant as a ward rather than a dependent.[3]

Defendant also challenges the juvenile court's selection of wardship over dependency on the grounds the same result—ensuring she would participate in treatment and not go AWOL—could have been accomplished by continuing her as a dependent. In support of this argument, defendant proffers a list of other secure, restrictive group homes outside the Bay Area but within California and asserts the trial court could have placed her at one of those facilities while maintaining her dependency status. In the same vein, she asserts the Agency "never placed the minor in a therapeutic treatment facility or a group home in a more remote in-state location." Even if these assertions are true, they do not amount to a showing the juvenile court abused its discretion by declaring defendant a ward. (See *Joey G., supra,* 206 Cal.App.4th at p. 346 ["To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice."].) On the contrary, the trial court's wardship determination was supported by substantial evidence—of defendant's substance abuse, prostitution and her chronic abandonment of

---

[3] Defendant's reliance on *Joey G., supra,* and *In re Marcus G.* (1999) 73 Cal.App.4th 1008 (*Marcus G.*), is misplaced. In those cases, unlike this one, reversal was warranted because the juvenile court was not presented with a joint assessment by the probation and welfare departments as required by section 241.1. (*Marcus G., supra,* 73 Cal.App.4th at p. 1014; *Joey G., supra,* 206 Cal.App.4th at p. 349.)

all prior placements. (See *In re Robert H., supra,* 96 Cal.App.4th at p. 1330 [juvenile court's findings will not be disturbed on appeal if supported by substantial evidence].)[4]

Defendant also seeks reversal on the grounds her constitutional and statutory rights to due process were violated because the section 602 jurisdictional hearing was held prior to the section 241.1 assessment. On this point, defendant notes rule 5.512 provides that the "the hearing on the joint assessment report must occur . . . no later than 15 courts days after the order of detention and *before the jurisdictional hearing*." (Rule 5.512(e), italics added.) She asserts this rule was violated because in her case the section 241.1 assessment was not ordered "until the case was accepted on a transfer-in in Alameda County on February 20, 2013, six days after the San Francisco Juvenile Court found section 602 jurisdiction on February 14, 2013."

Not only did defendant fail to object to the section 602 hearing going forward before a section 241.1 assessment had been conducted pursuant to rule 5.512, she affirmatively acquiesced in the section 602 proceeding, admitting to count 2 of the section 602 petition (misdemeanor resisting arrest) after waiving her constitutional rights and count 1 of the petition (misdemeanor solicitation to engage in an act of prostitution) was dismissed. Accordingly, defendant has forfeited the issue on appeal. (See, e.g., *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [citing cases in which appellate courts have applied the forfeiture doctrine "in dependency proceedings in a wide variety of contexts, including cases involving failures to obtain various reports required by statute"].)

Even if the issue was not forfeited, the failure to comply with rule 5.512 is not of constitutional magnitude. "A procedural due process claim . . . requires a deprivation of

---

**4** We summarily reject defendant's "public policy" argument that she should have remained a dependent because she was a "commercially sexually exploited minor." This wide-ranging argument, drawing upon the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.), the 2000 federal Trafficking Victims Protection Act, and Welfare and Institutions Code section 18259 (providing that the County of Alameda, "contingent upon local funding, may establish a pilot project . . . to address the needs and effective treatment of commercially sexually exploited minors") was not presented below. Nor does it change the fact the juvenile court's determination of wardship under section 241.1 was supported by substantial record evidence.

a constitutionally protected interest and a denial of adequate procedural protections. [Citations.]  Although what procedural process is due in a given circumstance may vary, it '*always* requires a relatively level playing field, the "constitutional floor" of a "fair trial in a fair tribunal," in other words, a fair hearing before a neutral or unbiased decision-maker.  [Citations.]'  [Citations.]"  (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 265–266.)  Here, although the time of the hearing may not have comported with the guidelines set forth in rule 5.512, the court did conduct a section 241.1 assessment hearing, and carefully considered both the evidence submitted and the argument of counsel before reaching the ultimate determination of whether to terminate appellant's status as a dependent.  Moreover, on this record, there is no basis to conclude the juvenile court would have continued defendant as a dependent, rather than declaring her a ward, had the section 24.1 assessment hearing had been held prior to the section 602 jurisdictional hearing.  The court would have received and based its decision on the same information, including defendant's history of going AWOL from placements, engaging in prostitution while AWOL, daily drug use, as well as the underlying the section 602 petition involving solicitation of prostitution and resisting an officer.  Thus, whether viewed as an error of state law or a due process violation, defendant cannot show prejudice from any error in the timing of the section 241.1 assessment hearing under either state or federal standards for harmless error.  (See *People v. Watson*, *supra*, 46 Cal.2d at p. 837 [question is whether it is "reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error"]; *Chapman v. California* (1967) 386 U.S. 18, 24 ["before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"].)

Defendant also contends the disposition was erroneous because there was no "case plan" as required in section 706.6.  Again, there was no objection to the lack of a case plan, nor was there any request for a continuance of the dispositional hearing for receipt of a case plan.  Accordingly, any claim of error on that ground was forfeited.  (See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 352–356; *In re Christopher S.* (1992)

10 Cal.App.4th 1337, 1344 [procedural matters waived on appeal if not raised in trial court].) Even if it was not, there was no prejudice, as the information required in a case plan under section 706.6 was included in the section 241.1 report and the probation department's investigation of other possible placements. Thus, the omission of a case plan was clearly harmless as it is not reasonably probable the court would have made a different finding had there been a formal case plan. (See *People v. Watson, supra,* 46 Cal.2d at p. 836.)

Lastly, defendant contends the juvenile court erred by ordering an out-of-state placement, asserting there was insufficient evidence to support the court's findings that out-of-state placement was in the minor's best interest and no equivalent in-state facility was available. Pursuant to section 727.1, subdivision (b), before ordering an out-of-state placement the court must determine that in-state facilities or programs are "unavailable or inadequate to meet the needs of the minor." We review a commitment decision "for abuse of discretion, indulging all reasonable inferences to support the juvenile court's decision." (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.)

In this case, after declaring wardship on March 13, 2013, the court held placement review hearings on March 28, April 11 and April 25, 2013, before finalizing its decision to place defendant at the Mingus Mountain Academy. Prior to placement, the court also referred her to the Guidance Clinic and received a report prepared by Leslie Marks, a Behavioral Health Care Clinician. Marks noted defendant was referred to the Guidance Clinic for a "psycho-diagnostic evaluation" covering a range of issues, such as whether defendant "has a substance-related disorder," whether "family or peer dynamics contribute or cause her delinquent behavior," and "[i]dentification *of what type of setting would be most beneficial* for [defendant]." (Italics added.) On the latter point, Marks concluded "the best setting for [defendant] is placement in a residential treatment program. [Defendant] has been continuously running away, placing herself in dangerous situations, and risks further being victimized and sexually exploited by others. [Defendant] poses a high flight risk. [Defendant] would benefit from a setting that has a therapeutic environment with sufficient safety and security so her underlying mental

11

health problems are addressed.  The residential setting needs to provide an opportunity for her to therapeutically work on issues of trauma, sexual exploitation, drug abuse, poor impulse control and her underlying feelings of loss and abandonment."

Moreover, the probation officer, in her placement review report filed on April 5, 2013, opined Mingus Mountain would be the best program for defendant because it "does well with the girls who are sexually exploited and who are AWOL risks.  The minor has a history from three different counties for prostitution and had run from numerous foster care placements.  A remote facility would be best for [defendant]."  The court found this a well-founded assessment, observing at the placement hearing on April 11, 2013, "So the fact that she is a flight risk is what's playing into this decision in terms of what is the appropriate placement for her.  And at this time what's being looked at is Clarinda Academy as well as Mingus Mountain.  So Thunder Road is not going to be an option at this point."

On April 12, 2013, the juvenile court signed an ex parte order approving defendant's placement at the Mingus Mountain Academy which contained the following findings:  "Mingus Mountain Academy is licensed by the state of Arizona and certified by the California Department of Social Services for the placement of minors.  [Citation.] [¶] In-State facilities or programs have been determined to be unavailable or inadequate to meet the needs of the minor.  [Citation.]  [¶] Equivalent facilities for the minor are not available in California and institutional care in Arizona is in the best interest of the minor and will not produce undue hardship. . . .  [¶] The [Multidisciplinary Team (MDT)] assessed the matter and approves the out-of-home placement and plan of the minor with Mingus Mountain Academy, Arizona.  [Citation.]"[5]

In sum, the evidence showed defendant required a controlled and remote environment that would allow her to engage fully in the therapeutic programs necessary

---

[5]  Defendant's request for judicial notice, filed on December 3, 2013, of the Foster Care Rates Group Home Facility of November 15, 2013, promulgated by the State of California, Department of Social Services, Children and Family Services Division is denied.  We reject the suggestion the court abused its discretion because it did not assess every level 14 group home on the list before selecting out-of-state placement.

to address her underlying mental health and drug abuse problems; that Mingus Mountain met those requirements; and that placement at Mingus Mountain would deter defendant from relapsing into the drug use and prostitution that resulted when she absconded from in-state placements, such as the Thunder Road drug treatment program. There was ample basis for concluding out-of-state placement was in the minor's best interest.

Similarly, the record solidly supports the court's determination there was no equivalent facility for appellant within the state. In this regard, the probation department explored placement at Grace Homes in Visalia and a placement in San Diego for pregnant women. However, after defendant terminated her pregnancy, probation determined that a remote placement would be more appropriate. In addition, the record shows that from July 26, 2012, to December 11, 2012, defendant was assigned to four different out-of-home placements and went AWOL from each of those placements. Moreover, defendant's preferred placement at Thunder Road was unsuitable because she went AWOL from that facility on each of her three prior placements there. Further, contrary to defendant's assertion, the juvenile court did not err by failing to require the probation department to report more thoroughly on in-state programs it had considered and rejected, and to explain why the programs were rejected. Indeed, section 727.1, governing of out-of-state placements, contains no such requirement, and the juvenile court made all findings required under section 727.1. (See *In re Oscar A.* (2013) 217 Cal.App.4th 750, 757 (*Oscar A.*) [stating that juvenile court "need not determine all in-state facilities are unavailable [and] . . . mere existence of other facilities in California does not mean the court abused its discretion by ordering out-of-state placement"].)

In sum, in light of defendant's history, the need to separate her from negative influences, and the lack of available and adequate in-state facilities, the juvenile court acted well within its discretion in ordering defendant placed in an out-of-state facility. (See *Oscar A., supra,* 217 Cal.App.4th at p. 758 [concluding that "[g]iven [the minor's] behavioral issues, substance abuse, and multiple AWOL's, an out-of-state facility would best serve his interests and the purpose of the juvenile court law to enable him to become a law-abiding and productive member of society"].)

## DISPOSITION

The juvenile court's dispositional order declaring appellant a ward, dismissing her dependency and ordering out-of-state placement is affirmed.

_____
Banke, J.

We concur:

_____
Dondero, Acting P. J.

_____
Becton, J.*

---

\* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.