Filed 5/4/20

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| In re S.O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br> Plaintiff and Respondent,<br>v.<br>S.O.,<br> Defendant and Appellant. | E073131<br><br>(Super.Ct.No. J265775)<br><br>OPINION |
| In re S.O., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br> Plaintiff and Respondent,<br>v.<br>M.T.,<br> Defendant;<br>S.O.,<br> Appellant. | E073132<br><br>(Super.Ct.No. J263297) |


APPEAL from the Superior Court of San Bernardino County. Christopher B.

Marshall, Judge. Affirmed.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant S.O.

Michelle D. Blakemore, County Counsel, and Pamela J. Walls, Special Counsel, for Plaintiff and Respondent San Bernardino County Children and Family Services.

No appearance for Defendant M.T.

No appearance for Plaintiff and Respondent The People.

Since July 2016, appellant S.O. has been subject to dual status supervision as both a dependent (Welf. & Inst. Code,[1] § 300, case No. E073132) and a ward (§ 602, case No. E073131) of the court, and San Bernardino County Children and Family Services (CFS) was designated as the lead agency. On June 25, 2019, the juvenile court dismissed the dependency proceedings, effectively modifying dual status jurisdiction to single status jurisdiction. S.O. appeals,[2] contending the court abused its discretion in modifying jurisdiction by failing to obtain a "section 241.1 dual status report addressing the advisability of a modification to single jurisdiction under" section 602 and, thus, failing to make "a reasoned determination" of his best interests. CFS argues, "dismissal was warranted under section 241.1, subdivisions (d) and (e)," "dual status was no longer authorized," and implicit findings support dismissal of the section 300 dependency petition. We reject S.O.'s contentions and affirm.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Technically, minor's counsel is pursuing this appeal on behalf of minor since he has absconded from the juvenile court's jurisdiction. (See fn. 7, *post*.)

2

## I. PROCEDURAL BACKGROUND AND FACTS

On January 26, 2016, S.O. (age 13 years) was declared a dependent child of the court as a result of physical abuse by his current stepfather and his mother's failure to protect him; he was placed in a foster home.[3] (§ 300, subds. (a)-(c).) Less than five months later, a delinquency petition was filed, and S.O. was declared a ward of the court for sodomizing a six-year-old foster care child. (§ 602.) Consequently, CFS filed a supplemental dependency petition alleging S.O. had been sexually abused by his former stepfather and referred the matter to the San Bernardino County Welfare and Institutions Code section 241.1 committee (the committee) for review and recommendation.[4] (§§ 300, subds. (b), (d), 342, 387.) Based on the committee's recommendation, the juvenile court declared S.O. a ward of the court subject to dual status supervision with CFS as the lead agency. S.O. was placed in a special group home and enrolled in SAMS.[5]

In 2017, S.O.'s mother stopped contacting S.O., and CFS has been unable to locate her. Since there was no parental involvement and no other family member willing

---

[3] S.O.'s biological father's whereabouts were unknown. However, he was "believed to be in Tijuana, Mexico."

[4] The committee was composed of CFS and probation department employees. The committee protocol was developed by CFS, the probation department, the juvenile court, the behavioral health department, the public defender's office, private counsel, the district attorney's office, and county counsel.

[5] Saving Another Manchild Child Services, Inc., is an 18-month "residential therapeutic sexual assault program for juvenile perpetrators and victims."

and able to care for minor, CFS recommended a permanent plan of independent living, transitioning to adulthood, with identification of a caring adult to serve as a lifelong connection.

As of 2019, S.O. had not completed the SAMS program because he had run away on two separate occasions:  Once on April 22, 2018, returning on September 6, 2018, after requesting to be picked up in Los Angeles by one of the group homes' staff members, and a second time on January 19, 2019.  S.O. reported that during his 2018 absence, he "was trafficked by his adult brother" and was "using drugs and ha[ving] sex with males and females for drugs."  His history of drug abuse includes methamphetamine and heroin.  S.O. remains missing with a delinquency bench warrant outstanding.

Effective April 30, 2019, San Bernardino County became a single status county, having previously been a dual status/lead agency county.  (§ 241.1, subd. (d); see the committee's "Single Status Protocol.")[6]  Following this change, representatives from CFS, the probation department, and the district attorney's office met to discuss the future of several dual status cases.

Because of the change to a single status county, in June 2019, CFS moved to dismiss S.O.'s dependency matter.  Minor's counsel objected to the dismissal on the grounds (1) S.O. had not received any notice of the hearing because he had been on "bench warrant status in 602 court since February 25, 2019," (2) dismissal of the

---

[6]  We grant CFS's unopposed request for judicial notice filed January 7, 2020, requesting the San Bernardino County's Welfare and Institutions Code section "241.1 Committee Single Status Protocol," dated August 2019, be included in the record on appeal.  (Evid. Code, §§ 452, 453, 459.)

dependency matter would "amount to a lead change" without notice and in minor's absence, and (3) "[w]e have no idea what probation's position would be" since there was no committee report. In response, CFS informed the juvenile court that it had met with the probation department and the district attorney's office to discuss which agency would be appropriate in dual status cases postdissolution of dual status jurisdiction; however, CFS maintained its independent authority to seek dismissal of any dependency matter.

The juvenile court rejected the deficient notice argument, stating "the fact that [S.O.] is AWOL right now and is not able to receive direct and personal notice of the hearing does not mean the hearing cannot go forward because his counsel is here, and his counsel has been provided that notice. And he is AWOL with existing warrants on both sides of the fence, [sections] 602 and 300." Regarding the lack of a section 241.1 recommendation from the probation department, the court asked, "Is there a probation status memo given to the Court?" Lilly Hill, appearing on behalf of the probation department, replied, "There's a report dated 6-4-2019. It was the dual status hearing. It just updated that he absconded January 19th, and on February 25th a bench warrant was issued for his arrest, and his whereabouts are still unknown." Otherwise, Ms. Hill made no objection to CFS's motion to dismiss the dependency jurisdiction. The court granted the motion and stated: "So the Court is going to grant the motion, and that the dependency matter is dismissed. [¶] The court will recall the warrant of June 12th, 2019. The court will dismiss the [section 300] petition . . . of December 15th, 2015." S.O. appeals.

5

## II.  DISCUSSION

According to S.O., the "central question in this case is what protocol must be followed in transitioning from an existing dual status case to a single status case."  He challenges the dismissal of his dependency case arguing the requirements of section 241.1 were not met because no committee report existed with a recommendation from the probation department, he was not present at the hearing on the motion to dismiss,[7] and the juvenile court failed to make the necessary findings.  As we explain, we reject his challenge.

### A.      Standard of Review.

"In dependency cases, a juvenile court has jurisdiction to make orders pertaining to '[a]ny child who comes within any of the [statutory] descriptions' set forth in subdivisions (a) through (j) of section 300.  [Citation.]  The *purpose of dependency law 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm*.'  [Citation.]  As numerous courts have reiterated, '[t]he paramount purpose underlying dependency proceedings is the protection of the child."  (*Imperial*

---

[7] S.O.'s absence from the hearing was by choice.  S.O. chose to remove himself from his assigned placement and treatment program when he ran away.  The juvenile court could properly treat S.O.'s choice as a waiver of the right to be present at the hearing and of the benefits of being present.  (Cf. *In re Vanessa M*. (2006) 138 Cal.App.4th 1121, 1132 [A court may properly treat a[n] . . . unjustified failure to appear at a duly noticed hearing "as a waiver of the right to be present *at that hearing* and of the benefits of being present."].)

*County Dept. of Social Services v. S.S.* (2015) 242 Cal.App.4th 1329, 1334, italics in original and added.)

A juvenile court's order dismissing a dependency is reviewed for abuse of discretion. (*In re Twighla T.* (1992) 4 Cal.App.4th 799, 806 [no abuse of discretion to dismiss dependency jurisdiction pursuant to § 366.3, subd. (a), where there was substantial evidence the legal guardian cooperated in arranging visits].) Likewise, "[w]e review the juvenile court's determination under section 241.1 for abuse of discretion. [Citation.] 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' [Citation.] Throughout our analysis, we will not lightly substitute our decision for that rendered by the juvenile court. Rather, we must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings where there is substantial evidence to support them." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1506-1507; see *id.* at p. 1513 [reading § 241.1 as granting "broad discretion to the juvenile court when determining which status will best meet a particular minor's needs"].) However, to the extent our analysis involves statutory interpretation, this is a legal matter which is subject to de novo review. (*In re Aaron J.* (2018) 22 Cal.App.5th 1038, 1054.)

B.    *Applicable Legal Principles.*

"A child who has been abused or neglected falls within the juvenile court's protective jurisdiction under section 300 as a 'dependent' child of the court. In contrast, a juvenile court may take jurisdiction over a minor as a 'ward' of the court under

section 602 when the child engages in criminal behavior.  [Citations.] . . . [S]ection 241.1 sets forth the procedure that the juvenile court must follow when faced with a case in which it may have dual bases for jurisdiction over a minor." (*In re M.V.*, *supra*, 225 Cal.App.4th at pp. 1505-1506, fn. omitted.)

"Section 241.1 requires that whenever it appears a minor may fit the criteria of both a dependent child and a delinquent ward, the child protective agency and the probation department must jointly 'initially determine which status will serve the best interests of the minor and the protection of society.' [Citation.]  Both agencies present their recommendations to the juvenile court, which then must determine the appropriate status for the child.  [Citation.]  Dual jurisdiction is generally forbidden; a minor may not be both a dependent child and a delinquent ward of the court absent a written protocol agreed upon by the presiding judge of the juvenile court, the child protective agency and the probation department." (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1123 (*D.M.*).)  The statutory mandate is "augmented by rule 5.512, which requires the joint assessment under section 241.1 to be memorialized in a written report." (*In re M.V.*, *supra*, 225 Cal.App.4th at p. 1506.)  However, neither Welfare and Institutions Code section 241.1 nor California Rules of Court, rule 5.512, addresses a county's transition from dual to single status protocol.

*C.     Analysis.*

At the inception of this case, San Bernardino County operated under the dual status with a lead court/lead agency system. "Section 241.1, subdivision (e)(2), requires that any county which adopts a written protocol for a minor to be deemed 'dual status,' must adopt either an 'on-hold' system or a 'lead court/lead agency.' . . . [¶] 'In counties in which a lead court/lead agency system is adopted, the protocol shall include a method for identifying which court or agency will be the lead court/lead agency. That court or agency shall be responsible for case management, conducting statutorily mandated court hearings, and submitting court reports.'" (*In re R.G.* (2017) 18 Cal.App.5th 273, 283.)

Here, upon the filing of S.O.'s section 602 petition in 2016, a joint written recommendation was provided by CFS and the probation department. (§ 241.1, subd. (a).)[8] The juvenile court adopted the recommendation and declared S.O. a ward of the court subject to dual status supervision with CFS as the lead agency. As the lead agency, CFS became statutorily "responsible for case management, conducting statutorily

---

[8] Section 241.1, subdivision (a), in relevant part, provides: "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall . . . initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor."

9

mandated court hearings, and submitting court reports." (§ 241.1, subd. (e)(5)(B).)[9] CFS fulfilled its statutory responsibilities.

Effective April 30, 2019, San Bernardino County ended the dual status/lead agency system and became a single status county. Thus, dual jurisdiction over S.O. was prohibited. (§ 241.1, subd. (d); *In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1012, 1015 (*Marcus G.*).) In response, CFS moved to dismiss S.O.'s dependency proceedings, reporting that it had complied with S.O.'s case plan: the permanent plan for S.O. had been "fully implemented" (planned permanent living arrangement), and "[c]onditions no longer exist[ed] which warrant initial assumption of jurisdiction under" section 300. Over S.O.'s objection, the juvenile court granted CFS's motion. On appeal, S.O. argues the requested modification of the court's jurisdiction triggered the requirements of

---

[9] Section 241.1, subdivision (e)(5)(B), in relevant part, provides: "Counties that exercise the option provided for in this subdivision shall adopt . . . a 'lead court/lead agency' system as described in subparagraph (B). There shall not be any simultaneous or duplicative management or services provided by both the county probation department and the child welfare services department. It is the intent of the Legislature that judges, in cases in which more than one judge is involved, shall not issue conflicting orders. [¶] . . . [¶] (B) In counties in which a lead court/lead agency system is adopted, the protocol shall include a method for identifying which court or agency will be the lead court/lead agency. That court or agency shall be responsible for case management, conducting statutorily mandated court hearings, and submitting court reports."

section 241.1, subdivision (f),[10] which prescribed a joint recommendation report. He relies on *Marcus G., supra,* 73 Cal.App.4th 1008 and *In re Joey G.* (2012) 206 Cal.App.4th 343 (*Joey G.*). As we explain, we are not persuaded that such report was necessary.

To begin with, we find S.O.'s reliance on *Marcus G.* and *Joey G.* to be misplaced. In both cases, a subsequent petition was filed creating a dual status and, thus, the need for a joint recommendation report. In *Marcus G., supra,* 73 Cal.App.4th 1008, a dependent minor living in foster care was later declared a ward of the court after his arrest for robbery. A referee of the juvenile court dismissed dependency proceedings based on a report and declaration by the social worker outlining the duplicative services that would be provided if dependency jurisdiction were maintained. (*Id.* at pp. 1011, 1014.) The Court of Appeal reversed the order dismissing the dependency case and remanded the case to "the juvenile court with directions to determine whether the procedures set forth in section 241.1 were followed" and whether "an assessment was made within the

---

**10** Section 241.1, subdivision (f), provides: "Whenever the court determines pursuant to this section or Section 607.2 or 727.2 that it is necessary to modify the court's jurisdiction over a dependent or ward who was removed from his or her parent or guardian and placed in foster care, the court shall ensure that all of the following conditions are met: [¶] (1) The petition under which jurisdiction was taken at the time the dependent or ward was originally removed is not dismissed until the new petition has been sustained. [¶] (2) The order modifying the court's jurisdiction contains all of the following provisions: [¶] (A) Reference to the original removal findings and a statement that findings that continuation in the home is contrary to the child's welfare, and that reasonable efforts were made to prevent removal, remain in effect. [¶] (B) A statement the child continues to be removed from the parent or guardian from whom the child was removed under the original petition. [¶] (C) Identification of the agency that is responsible for placement and care of the child based upon the modification of jurisdiction."

delinquency proceeding that wardship status, rather than dependency status, is appropriate for the minor." (*Id.* at p. 1017.) It further directed the juvenile court to reinstate its order dismissing the dependency case if it determined that an assessment in accordance with section 241.1 had been properly made within the delinquency proceeding. (*Ibid.*) If not, the appellate court directed the juvenile court to order "the probation department and the welfare department to comply with the procedures of section 241.1" and to determine itself "whether the minor should be treated as a dependent child or a delinquent minor." (*Ibid.*)

Similarly, in *Joey G.*, the minor was a court-placed foster child when he committed a crime, thus, making him both a dependent and ward of the court. (*Joey G.*, *supra*, 206 Cal.App.4th at pp. 345-346.) Subsequently, the court determined the minor fell under section 602 only and ordered him detained as a ward of the court. (*Joey G.*, at p. 346.) Division One of this district reversed, concluding the procedures in section 241.1 were not followed since no joint report was created and presented to the court, the probation officer's report did not include a joint recommendation, and there was no evidence of the social worker's "suggestions or guidance for how to determine [the minor's] status or how to proceed." (*Joey G.*, at p. 349.)

*Marcus G.* and *Joey G.* are factually distinguishable. While those cases involved the actions taken at the *inception* of a dual status jurisdiction case, this case does not. Here, the inception of dual status jurisdiction occurred in 2016, and the requirements of section 241.1 were followed. We are not convinced the language of subdivision (f) of

section 241.1 contemplates the modification of jurisdiction presented in this case.[11]

Rather, at this stage in S.O.'s dependency proceedings, no joint recommendation report for dismissal of the dependency action was required. "Because no report was required, it follows that any error in the manner it was prepared is necessarily harmless." (*D.M.*, *supra*, 173 Cal.App.4ᵗʰ at p. 1124 [no § 241.1 report required since minor was not a ward when the court assumed jurisdiction over her as a dependent child].)

Even assuming arguendo that a joint recommendation report was required, the record does not support S.O.'s assumption that the probation department failed to participate or offer its independent assessment of the relevant criteria. (See *D.M.*, *supra*, 173 Cal.App.4th at p. 1124.) The committee's single status protocol, at page 8, reads: "If a joint recommendation cannot be reached by the agencies, both agencies will submit a report to the Court stating that a consensus could not be reached and attach the two individual recommendations." (See fn. 6, *ante*; see also Cal. Rules of Court, rule 5.512(d) ["The joint assessment report must contain the joint recommendation of the probation and child welfare departments if they agree on the status that will serve the best interest of the child and the protection of society, or the separate recommendation of each department if they do not agree."].) The probation department did not submit a separate report. When the juvenile court inquired as to "a probation status memo," Ms. Hill, appearing on behalf of the probation department, replied, "There's a report dated 6-4-2019. It was the dual status hearing. It just updated that he absconded January 19th, and

_____

[11] Although S.O. argues to contrary, he offers no case authority in support of his interpretation.

13

on February 25th a bench warrant was issued for his arrest, and his whereabouts are still unknown." Otherwise, Ms. Hill made no objection to CFS's recommendation to dismiss the dependency jurisdiction. This evidence supports a reasonable inference the probation department concurred with CFS's recommendation. (*People v. Davis* (2013) 57 Cal.4th 353, 360 ["'An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action.'"]; Evid. Code, § 600, subd. (b).)

Moreover, any technical deficiencies in the joint recommendation report or the juvenile court's failure to make the required findings in support of its ruling were harmless given the court's broad discretion in determining S.O.'s status—dependent or ward—and the ample information on which the court based its decision. (Compare *In re M.V.*, *supra*, 225 Cal.App.4th at p. 1511 [because "the vast majority" of the evidence that minor complained was missing from the recommendation report was before the court from other sources, "any technical deficiencies in the assessment were harmless"] with *In re R.G.*, *supra*, 18 Cal.App.5th at p. 290 [The "harmless beyond a reasonable doubt standard is applicable because the court effectively held the section 241.1 hearing . . . without the benefit of a section 241.1 assessment report and without notifying the proper parties that it would be making a section 241.1 determination at that hearing."].) This case was three years into dual status jurisdiction, and the individual circumstances unique to S.O. were being sufficiently addressed.

Regarding the dependency aspect of the case, there are no plans to return S.O. to his family since his parents' whereabouts remain unknown, and there are no other family members available for placement. Given the nature of S.O.'s criminal offenses, placement in a foster home was not feasible and, thus, he was placed in a special home "that also supports 300/600 as it is a Sex Offender Treatment Program." His permanent plan is to transition into independent living, with the identification of a caring adult to serve as a lifelong connection. As S.O. notes, he is scheduled for educational tutoring, sexual abuse victim counseling, individual therapy, group therapy, and an individual education program to address his learning disabilities. However, he voluntarily left his assigned placement, has not been attending school, and has not completed the SAMS program. (See *In re M.V.*, *supra*, 225 Cal.App.4th at p. 1512 [minor's history of absconding from her § 300 placements warranted the court's determination to declare her a ward].) Nonetheless, SAMS is amenable to continuing S.O. in its treatment program once he is apprehended. S.O. would then be allowed to continue counseling and transitional services would be offered.

At this stage of S.O.'s dependency case, there is no reason to continue dependency jurisdiction, and there is no requirement that the juvenile court make the findings required under section 241.1 in support of its ruling.

## III.  DISPOSITION

The order dismissing the section 300 dependency proceedings is affirmed.

CERTIFIED FOR PUBLICATION


McKINSTER
Acting P. J.

We concur:


MILLER
J.


RAPHAEL
J.

16