Filed 6/30/14  In re R.M. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re R.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.M.,<br><br>        Defendant and Appellant. | A139677<br><br>(Solano County<br>Super. Ct. No. J41887) |

Appellant R.M. was adjudged a ward of the court following the sustaining of a petition pursuant to Welfare and Institutions Code[1] section 602 alleging he committed misdemeanor child abuse against his eight-month-old nephew.  Appellant contends (1) there was insufficient evidence he committed child abuse, and (2) the trial court abused its discretion by adjudicating the petition and declaring a wardship without making a valid status determination under section 241.1.  We find substantial evidence supports the judgment, and no status determination was required.  We shall remand for correction of a clerical error in the juvenile detention disposition report, but otherwise affirm the judgment.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

# I. BACKGROUND

An original section 602 petition filed on February 21, 2013, alleged appellant committed misdemeanor child abuse by willfully inflicting unjustifiable physical pain and mental suffering on an eight-month-old child. (Pen. Code, § 273a, subd. (b).) Appellant failed to appear at his arraignment and a bench warrant issued for his arrest. He was arrested on July 4, 2013. Appellant was arraigned and the warrant was recalled on July 8. He was detained in juvenile hall.

A contested jurisdictional hearing began on July 26, 2013.

## A. *Prosecution Case*

Two witnesses testified at the contested jurisdiction hearing—appellant's younger sister, T.M., and the Vacaville police officer who interviewed T.M. on the evening of October 21, 2012, Officer Shawn Windham. T.M.'s testimony at the hearing varied in significant respects from what she originally told Officer Windham.

### 1. *T.M.*

T.M. testified she and her three siblings were at home on October 21, 2012. T.M. was approximately 16 years old at the time. T.M.'s siblings were appellant's older sister Ashley, 19 years old, appellant, then 16 years old, and their seven-year-old brother, P.R. Ashley's eight-month-old baby, C.M. (hereafter the baby), was also in the house. P.R. and the baby were in the master bedroom because appellant and Ashley were arguing, and T.M. did not want the baby to be "around anybody while they were fighting."

T.M. said the argument started because appellant had gone into her and Ashley's bedroom and thrown things off the dresser and thrown their clothes on the floor. Ashley was angry and accused appellant of stealing her marijuana. She entered appellant's bedroom to mess up his room. Appellant came out of his room and stepped into the hall holding a wooden abacus. The abacus was marked as an exhibit. T.M. referred to it as a "toy." The juvenile court initially described it as a "wooden abacus . . . . a little more than a foot by a foot square . . . . [that] probably weighs about three pounds."

Still holding the abacus, appellant ran down the hallway to the master bedroom where the baby was lying on the floor on his back. T.M. saw appellant leave his room,

followed him into the master bedroom, and stood next to him near the bedroom door. He appeared to be mad as he held the abacus in his hand. T.M. said she looked at appellant's face just as he threw the abacus in an overhand motion "kind of like . . . you throw a baseball." T.M. told Officer Windham appellant looked *at the baby* and then threw the abacus, hitting his face, and causing him to scream. At the hearing, T.M. testified appellant looked *at the bed* when he threw it, and that it *bounced* off the edge of the bed and *accidentally* hit the baby "[o]n the side of his face." T.M. admitted she previously told Officer Windham appellant was looking at the baby when he threw the abacus. She did not recall whether she had told Windham the abacus bounced off the mattress before it hit the baby. T.M. testified she told the truth to Officer Windham on the night of the incident.

Immediately after being struck with the abacus, the baby screamed and then cried for 20 minutes or so. T.M. described the baby's injury as follows: "[H]e had a bump going down his eyebrow and onto his cheek. [¶] . . . [¶] . . . It was just like a swelling on his cheek and on his forehead," and it was "red," but the skin was not broken and there was no bleeding.

T.M. testified that when the abacus hit the baby, appellant did not go to him or try to comfort him. Instead, when Ashley told him she was going to call the police and press charges, appellant ran out of the house. T.M. testified she called the police and, at Ashley's request, told the 911 operator appellant intentionally hit the baby with the abacus.

T.M. acknowledged she loved appellant and did not want to see him in trouble. On redirect examination, T.M. acknowledged the first time she stated she did not believe appellant intentionally threw the abacus at the baby was when she spoke with a representative of the public defender's office the day before the hearing, and she had never told that to anyone at the district attorney's office. T.M. explained her judgment may have been clouded by anger at first: "When it happened, I was really mad because [the baby] was hurt and he was crying, and [the baby]'s my nephew, and I love him like he was my own, like my own son, . . . so I may have been clouded with judgment, like

3

over anger at my brother for hurting him, but I can't really tell if . . . what I said was true. I mean, I know that I told the truth, but I could have been clouded with judgment at that time."[2]

### 2. *Officer Shawn Windham*

Officer Windham testified he went to appellant's home at about 6:19 p.m. on October 21, 2012 in response to a call about a family dispute. Officer Windham said T.M. told him: "[T.M.] heard her sister, Ashley, yelling. . . . She had ultimately seen Ashley go into her brother, [appellant's], bedroom, and at some point . . . she saw [appellant] come out of the bedroom and [he] was holding the door from the outside, with Ashley still being on the inside. . . . [¶] . . . [¶] . . . She said [appellant] had the [abacus], looked directly at the child, [the baby], threw the [abacus], hitting [the baby] in the face. [¶] . . . [¶] . . . She said [the baby] immediately began screaming." Officer Windham photographed the baby's face, but acknowledged the photograph did not show the "red mark" on his face that was visible to the eye when the photograph was taken.

## B. *Trial Court Rulings*

At the conclusion of the People's case-in-chief, appellant's trial counsel, Francisco Vera, made an oral motion to dismiss the petition under section 701.1, contending there was insufficient evidence to sustain the allegation because there was not "enough evidence of unjustifiable pain causing the [baby] mental suffering." The motion was denied, and appellant rested on the state of the evidence.

Following argument, the trial court ruled as follows: "Well, I'm not going to disagree with you, Mr. Vera, that this . . . kind of case . . . normally wouldn't get to court. These kind of things happen regularly in families . . . and they never have the police called, and the case never gets to court . . . . [¶] But in this particular case, it was charged. It did get to court, so I have to look at the elements and whether or not the facts prove the elements. And you referred to the statute as child endangerment. It's really also entitled child abuse. It's also called child abuse, neglect, endangerment. There's a couple of

---

[2] T.M. clarified she meant her anger may have clouded her judgment.

4

other titles. [¶] It's a misdemeanor and you can commit this misdemeanor a couple of different ways. One is you can willfully inflict physical pain on the minor. Basically that means he hit him or something along those lines. That's the usual way it happens. But the other way you can do it is to be criminally negligent. Criminally negligent is just to do an act that was foreseeable that is aggravated or reckless or flagrant conduct, departure from the crime under circumstances that's likely to cause some great injury. [¶] And the reality is, is if you take this—everybody's called it a toy. It's Exhibit 3. It's not really a toy. It's an abacus. It's pretty heavy. And there's no good reason, I can see, to chuck this thing across the room, especially when it's pretty obvious there's a couple of small kids right in the direction you're chucking it or throwing it, and certainly that is negligent and it's foreseeable it would hit the baby. And frankly, it's lucky the baby wasn't really badly injured. And it did hurt the baby, and the baby did get an injury, so as a technical matter, it is true that he committed this misdemeanor beyond a reasonable doubt, so I'll find that the petition [is] true. I'll sustain Count One."

At disposition on August 20, 2013, the juvenile court adjudged appellant, age 17, a ward of the court and placed him on probation at the New Foundations program. This timely appeal followed.

## II.  DISCUSSION

Appellant contends (1) there was insufficient evidence he committed misdemeanor child abuse, (2) the trial court abused its discretion by adjudicating the petition and declaring a wardship without making a valid status determination under section 241.1, and (3) the juvenile detention disposition report erroneously states appellant admitted the allegation of the petition.[3]

---

[3] The Attorney General concedes the juvenile detention disposition order should be amended to delete the check mark in the box stating "Final Plea [¶] Admit" and add a check mark in the box entitled "Finding [¶] Sustained." We will amend the order to correct this clerical error.

5

**A.** *Sufficiency of the Evidence*

Appellant contends the evidence failed to establish he had the requisite mental state for a finding under Penal Code section 273a—that he acted intentionally for the purpose of bringing about the resulting harm to the child. He further contends the evidence does not justify an inference of criminal negligence.

Penal Code section 273a, subdivision (a), defining felony child abuse, "is an omnibus statute that proscribes essentially four branches of conduct: (1) willfully causing or permitting a child to suffer, or (2) inflicting unjustifiable physical pain or mental suffering on a child, or (3) having the care or custody of any child, willfully causing or permitting the person or health of a child to be injured, or (4) willfully causing or permitting a child to be placed in such situation that its person or health is endangered. (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215 (*Sargent*).)" (*People v. Clark* (2011) 201 Cal.App.4th 235, 242, fn. 3 (*Clark*).) Felony child abuse requires the abusive act occur "under circumstances or conditions likely to produce great bodily harm or death." (Pen. Code, § 273a, subd. (a).) Misdemeanor child abuse under section 273a, subdivision (b) punishes the same categories of conduct as felony child abuse but does not require the conduct occur under circumstances likely to produce great bodily harm or death. (*Clark*, at p. 242, fn. 2.)

In deciding a claim of insufficient evidence in a criminal case, " 'we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] . . . ". . . ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" [Citation.]' [Citations.] The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507–508.) We apply the same standard of review for sufficiency of the evidence in appeals from juvenile court

proceedings as in adult criminal appeals. (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1328.)

Violations of Penal Code section 273a can occur in a wide variety of fact patterns from active conduct by direct assault to child endangerment by extreme neglect. (*Sargent*, *supra*, 19 Cal.4th at pp. 1215–1216.) Here, we find there was sufficient evidence appellant directly inflicted unjustifiable physical pain or mental suffering on the baby—one of the four categories of conduct proscribed by section 273a, subdivision (b)—by deliberately throwing the abacus at the baby and hitting the baby's face with it. As the trial court stated, "[T]here's no question that [appellant] willfully . . . threw the thing on purpose, which resulted in infliction of the unjustifiable physical pain."

The evidence supporting the court's finding included the following: T.M. followed appellant into the master bedroom and stood next to him there. He had been fighting with the baby's mother and still appeared to T.M. to be angry. T.M. told Officer Windham appellant looked at the baby and then threw the abacus at the baby, hitting his face and causing him to scream. T.M. testified she saw appellant's face just as he threw the abacus. He threw it overhand like a baseball. T.M. testified she told the truth to Officer Windham on the night of the incident. She stated the abacus struck the baby on the side of his face, causing him to scream and then cry for approximately 20 minutes. Instead of expressing regret and trying to help the baby—the reaction most consistent with unintentionally causing an injury—appellant ran out of the house.

"The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366; Evid. Code, § 411 [evidence of one witness entitled to full credit is sufficient proof of any fact].) Here, the testimony of T.M. and Officer Windham established appellant had the necessary mens rea for direct infliction of abuse—a general criminal intent to inflict unjustifiable physical pain or mental suffering on his eight-month-old nephew evidenced by throwing a sizeable wooden object at him. (See *In re L.K.* (2011) 199 Cal.App.4th 1438, 1445 [proper burden of proof for a direct

infliction situation is a general intent to willfully inflict unjustifiable physical pain; willfully is defined as when someone does an act willingly or on purpose].) It is immaterial T.M. recanted some of her statements to Windham when she took the stand, and suggested appellant threw the object at the bed. The juvenile court was not required to accept T.M.'s 11th-hour recantation, especially since she admitted she loved her brother and did not want to see him in trouble. (See *People v. Cuevas* (1995) 12 Cal.4th 252, 276–277 [trier of fact was entitled to rely on out-of-court identifications of the defendant even though witnesses disowned their statements at trial, where the prosecution offered evidence they had a motive to falsely recant].)

We find the juvenile court's finding sustaining the child abuse allegation was supported by substantial evidence.

## B. *Status Determination*

Appellant maintains the court erred to his prejudice by not timely requesting a joint assessment report and making a determination of whether to exercise dependency or delinquency jurisdiction in his case pursuant to section 241.1[4] and California Rules of Court, rule 5.512.[5] He contends further errors were committed in the belated preparation

---

[4] Section 241.1, subdivision (a) provides in pertinent part: "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor. . . ."

[5] California Rules of Court, rule 5.512 provides in pertinent part: "(a) . . . Whenever a child appears to come within the description of section 300 and either section 601 or section 602, the responsible child welfare and probation departments must conduct a joint assessment to determine which status will serve the best interest of the child and the protection of society. [¶] (1) The assessment must be completed as soon as possible after the child comes to the attention of either department. [¶] (2) Whenever possible, the determination of status must be made before any petition concerning the child is filed. [¶] (3) The assessment report need not be prepared before the petition is filed but must be provided to the court for the hearing as stated in (e). [¶] . . . [¶] (e) . . . If

8

of a section 241.1 report after his jurisdiction hearing, and in the trial court's handling and resolution of the status determination. To the extent any of appellant's claims were waived by his failure to timely assert them in the trial court, he argues his trial counsel rendered ineffective assistance.

### 1. *Facts*

Following the conclusion of the contested jurisdictional hearing, appellant's mother stated she would not permit him to return home due to concerns about the safety and well-being of the other household members. Before she would allow him to return home she wanted him to complete a program such as New Foundations to address some of his behavioral issues. The trial court stated it would keep appellant detained pending disposition although the court pointed out "this is not the kind of thing that normally I would keep a kid in juvenile hall for." Appellant's trial counsel indicated he would be asking for a status determination under section 241.1. The court thereafter directed the preparation of a joint assessment report under section 241.1 and set the hearing on the report for the same date as the disposition hearing.

The Solano County Department of Health and Social Services, Child Welfare Services Division, and the Solano County Probation Department issued a joint recommendation and assessment that appellant be declared a section 602 ward of the court and placed in the New Foundations program. The report stated: "By remaining a [section] 602 . . . the minor will be adjudged a ward of the Court, and placed under the supervision of Probation. He will receive services that are determined suitable to address his specific areas of need. Of concern with this minor are his severe anger issues, substantial history of substance abuse, and significant family conflict. . . . [T]he minor's

---

the child is detained, the hearing on the joint assessment report must occur as soon as possible after or concurrent with the detention hearing, but no later than 15 court days after the order of detention and before the jurisdictional hearing. If the child is not detained, the hearing on the joint assessment must occur before the jurisdictional hearing and within 30 days of the date of the petition. The juvenile court must conduct the hearing and determine which type of jurisdiction over the child best meets the child's unique circumstances."

mother has indicated a willingness to allow the minor to return home, should these needs be addressed through programming . . . . [¶] . . . [¶] [His mother] was advised of the recommendation and is in agreement. . . ."

The report noted that between 2000 and 2012, appellant's family was investigated eight times regarding allegations of domestic violence, child abuse, and child neglect.[6] Appellant's presumed father had several arrests for domestic violence against his girlfriend during the time appellant and his siblings were in the father's care. However, appellant was never adjudged a dependent ward under section 300 and the family had no dependency history. In regard to appellant's home at the time of the section 602 petition, the report stated: "After interviewing the children and parents, there are no concerns of child abuse or neglect in the home."

Appellant's counsel stated his objection to the assessment report's recommendation and requested a contested disposition hearing. At the disposition hearing, counsel asked that appellant be given an opportunity to deal with his issues in the community. He proposed appellant be returned home on probation and provided with all services that would be available to him at home. The prosecution argued that although appellant's mother wanted him home as soon as possible, his substance abuse and anger issues were too extreme for him to return to the family without a few months in an intensive program such as New Foundations.[7] The juvenile court opted to place appellant at New Foundations.

2. *Analysis*

As an initial matter, appellant forfeited all of the claims he is now making with respect to the determination of his status and the joint status report because none of these issues were timely raised in the juvenile court. He did not ask the court to make an

---

[6] Three of the referrals concerned appellant's presumed father who was no longer living with the family by 2007. There were two referrals arising from conflicts between appellant's mother and Ashley in February 2008. The other referrals all arose from incidents between appellant and other family members in October 2012.

[7] New Foundations offered a four-month program.

10

express status determination before deciding the issue of jurisdiction. He did not complain of any deficiencies in the joint report or request the court to make express findings on the record. A minor's failure to object forfeits appellate review of the adequacy of—or the failure to prepare—mandatory assessment reports in juvenile proceedings. (See *In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [forfeiture doctrine has been applied in a wide variety of contexts in dependency proceedings, including cases involving failures to obtain various reports required by statute, citing cases]; *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338–1339 [failure to request a bonding study constituted waiver on appeal]; *In re Crystal J.* (1993) 12 Cal.App.4th 407, 411–412 [alleged deficiencies in § 366.21 assessment report forfeited on appeal]; *United States v. Olano* (1993) 507 U.S. 725, 731 [constitutional rights in civil and criminal cases may be forfeited by failure to object or assert rights in the trial court].)

Even assuming for the sake of analysis appellant did not forfeit his claims, we do not find them meritorious. No joint status report or status determination was required in the case. No section 300 petition was on file at any time while the section 602 petition was pending in this case. "Where the potential for dual jurisdiction arises *because a second petition is filed regarding a minor already within the juvenile court's jurisdiction*, the court presented with the *second* petition shall make the necessary determination." (*Los Angeles County Dept. of Children & Fam. Services v. Superior Court* (2001) 87 Cal.App.4th 320, 325, italics added; accord, *D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1124 (*D.M.*) ["C.M. was not a ward in November 2008 when the juvenile court assumed jurisdiction over her as a dependent child. Accordingly, there was no basis for a section 241.1 report."]; *In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1013 ["the assessment of which status would be appropriate for the minor is to accompany the *later petition*, i.e., the petition that creates the potential for dual jurisdiction"].) "[T]he purpose of section 241.1 is to resolve a scenario where dual jurisdiction may arise from petitions *that already have been filed* [citations], *not to create a dual jurisdiction issue by inviting subsequent petitions*. It rests in the discretion of executive branch employees—social workers, probation officers, and the district

attorney—whether to file such petitions, not the juvenile court." (*D.M.*, at p. 1127, italics added.)  Because no joint report or status determination was required in this case, any assumed errors or deficiencies in the report, or the manner in which the trial court responded to it were necessarily harmless.  (*Id.* at p. 1124.)

While appellant faults *D.M.* for construing section 241.1 too narrowly, we have found no cases or authorities questioning it on this point.  Under appellant's reasoning, a minor found to have committed an offense alleged in a section 602 petition could request a section 241.1 report even though no section 300 petition had been filed.  We believe the statute addresses *simultaneous* dual jurisdiction rather than inviting the minor to belatedly raise status issues after a wardship is declared.  In our view, *D.M.* is consistent with prior case law and with the intent of the statute.

In any event, even if a joint assessment report was required, we would find the various procedural deficiencies of which appellant now complains harmless.  The court *followed* the recommendations presented in the joint report.  It is clear from the facts presented in the report, and from the record of the court's proceedings, the court was well aware of appellant's family circumstances when it did so, and made its determinations in light of what it perceived to be appellant's best interests.  We find it highly unlikely the outcome would have been different had the section 241.1 proceedings taken place exactly as appellant now contends they should have.  Other than the reluctance of appellant's mother to take him back into the home before he received help for his anger and substance abuse issues, there was no factual basis for a petition under section 300.  This would have been a thin thread on which to premise an assertion of dependency jurisdiction.

We do not reach appellant's claim his trial counsel was ineffective in failing to timely raise issues concerning compliance with section 241.1.  Appellant's ineffective assistance of counsel claim necessarily fails because he cannot demonstrate a reasonable likelihood of a more favorable outcome.  (See *People v. Dickey* (2005) 35 Cal.4th 884, 907 [party claiming ineffective assistance of counsel must demonstrate *both* that his counsel's performance fell below an objective standard of reasonableness *and* there is a

12

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different].)

### III. DISPOSITION

The judgment is affirmed. The juvenile court is directed to prepare a corrected juvenile detention disposition report deleting the check mark in the box stating "Final Plea [¶] Admit" and adding a check mark in the box entitled "Finding [¶] Sustained."


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.


13