[No. B146372. Second Dist., Div. Five. Jan. 29, 2001.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JAIME M., Real Party in Interest.

**COUNSEL**

Lloyd W. Pellman, County Counsel, and Doraine F. Meyer, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Michael P. Judge, Public Defender, Albert J. Menaster and Michael Theberge, Deputy Public Defenders, for Real Party in Interest.

John W. McCauley, County Counsel, as Amicus Curiae upon the request of the Court of Appeal.

## OPINION

**ARMSTRONG, J.**—The Los Angeles County Department of Children and Family Services (DCFS), petitions for an extraordinary writ of mandate directing the trial court to vacate its order that a minor, Jaime M., be transported to MacLaren Children's Center. DCFS asserts that MacLaren is a nonsecure facility designed to house children detained pursuant to Welfare and Institutions Code section 300,[1] and is not appropriate for Jaime M. due to her status as a minor alleged to fall within the description of section 602. Because children alleged to fall within the provisions of section 602 are statutorily required to be segregated from children detained under section 300, we grant the petition. However, we approve of the larger purpose behind the trial court's order of finding a more appropriate placement for Jaime M. than juvenile hall. We further order that a determination of Jaime M.'s status before the juvenile court and her placement be settled directly, as is more specifically set forth below.

### FACTS AND PROCEDURAL HISTORY

Jaime M. was born with PCP in her system and has suffered a lifetime of self-destructive and violent tendencies. She was declared a dependent of the juvenile court under section 300 within 10 months of her birth. She is now 15 years old. Jaime M. went through 17 placements, including several stints at MacLaren Children's Center (MCC). MCC is not a secure facility, but is designed to house children detained under section 300 to protect them from neglect or abuse. From 1995 to 1998, Jaime M. was placed at MCC but was repeatedly sent to psychiatric hospitals due to "assaultive behaviors, danger to self and others." The public guardian was "reappointed" as her conservator in 1998, and given authority to find a placement for her and to require treatment. Beginning in May 1998, Jaime M. was placed in Metropolitan State Hospital.

On April 10, 1999, while in the Metropolitan State Hospital, Jaime M. attacked a ward attendant, took the attendant's keys, and tried to escape. Probation officers detained her, and she was taken to Los Padrino's juvenile hall. Delinquency proceedings were initiated against Jaime M.; she was charged with one count of robbery and three counts of battery. A November 21, 2000, interim review report in Jaime M.'s dependency proceeding indicates that she is currently detained at the Eastlake facility under the custody of the probation department. The same report notes that DCFS tried

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

to place Jaime M. at several facilities, with no success. Jaime M. had already been rejected by Harbor View Center because of her "highly volatile/labile, impulsive, major behavior management problem." Indeed, the probation officer's report concerning Jaime M. described her as suffering substantial psychiatric and behavioral problems, stating "minor['s] psychosis can only be handled by individuals who are trained in the psychiatric field."

On December 4, 2000, a referee acting for the delinquency court issued an order releasing Jaime M. to the custody of DCFS and directing that she be transported "forthwith" to MCC. DCFS apparently was unaware of any motion to release Jaime M. to its care. A DCFS attorney happened to learn of the order on December 5, 2000, when she was in dependency court and the referee mentioned it to her. The attorney was informed that the delinquency court decided to delay a determination on whether Jaime M. fell under section 602 jurisdiction until the mental health department could evaluate her, but felt that the juvenile detention system could not provide for Jaime M.'s needs in the meantime. Indeed, on November 30, 2000, the delinquency court had denied without prejudice a motion to dismiss the section 602 petition involving Jaime M., and ordered that the matter be coordinated with proceedings in the mental health department concerning her care.[2]

DCFS moved ex parte to vacate the December 4, 2000 order to transfer Jaime M., raising the strictures of section 206, which prohibits placing children "alleged or adjudicated" to fall within the terms of section 602 in the same facility as children detained under section 300. It submitted as an exhibit a letter from a psychologist in the Juvenile Court Mental Health Unit of the Department of Mental Health, indicating that MCC was not an appropriate placement for Jaime M. The doctor stated that MCC could not meet Jaime M.'s needs or ensure the safety of the staff and other children at MCC. DCFS also submitted a letter from the public guardian opposing placement of Jaime M. in MCC because it is not a secure facility that could properly treat her. On December 12, 2000, the motion was denied. The court reasoned that Jaime M. had not yet been adjudicated a ward of the court under section 602, and so remained a section 300 ward who could be placed at MCC. It felt that section 206 was a discretionary statute. The court denied a requested 24-hour stay of the order to permit appellate review. Later on December 12, 2000, this court granted an emergency stay of the order to transport Jaime M. to MCC. On December 14, 2000, an alternative writ issued directing the court to vacate its order and staying the order until the matter was resolved.

---

[2]Per the notice in the alternative writ, we take judicial notice of the superior court's file in case Nos. BK04122 and VJ20866.

## DISCUSSION

■ Section 206 provides that children taken into custody under section 300 "shall be provided . . . with separate facilities segregated from persons either alleged or adjudged to come within the description of Section 601 or 602." It goes on to specify that "segregated facilities may be provided in the juvenile hall or elsewhere." (§ 206.) Section 15 provides that, as used throughout the Welfare and Institutions Code, "shall" is a mandatory provision. (§ 15.) Because Jaime M. is alleged to come within the description of section 602, section 206 on its face mandates that she not be placed in a facility such as MCC, which is used to house minors detained under section 300. The delinquency court's impression that section 206 left it discretion to place Jaime M. in MCC was erroneous. Indeed, even if the court had such discretion, the decision would have been an abuse of discretion in light of Jaime M.'s violent history, MCC's demonstrated inability to handle her, and the numerous recommendations that she be maintained in a secure facility that could provide necessary care.

Jaime M.'s public defender argues that she is already a section 300 dependent of the juvenile court, so may be housed with other such dependents. Without citation to authority, he asserts that section 206 "did not intend to address pretrial housing for those cases where the minor remains a dependent, is not detained on a section 602 petition, and has not been made a ward of the juvenile court." Section 206 makes no such distinction between minors who first encounter the juvenile court based on a section 602 petition and those who were already within its jurisdiction under section 300. Rather, by acting in a criminal manner, a minor within the court's section 300 jurisdiction converts himself or herself into a minor "alleged . . . to come within the description of Section . . . 602." (§ 206.) That is, he or she becomes a person the Legislature deems inappropriate for detention alongside section 300 dependents. A segregated facility must be found for the minor.

That is not to say the court could not order Jaime M. released to the custody of DCFS while adjudication of the section 602 petition was pending. During the December 12, 2000, proceeding, the court questioned, "[W]hat's the difference between my right to have her placed in Juvenile Hall and my right to place her in MacLaren pending the determination of the matters that are before this court?" While the specification of MCC posed problems under section 206, the principle expressed by the court was correct. While the petition against Jaime M. is pending before it, the court is authorized to order her retention in juvenile hall or to have her released to her designated caretaker for appropriate placement.

We note that the public defender asserts the juvenile court was actually deciding that Jaime M. is a dependent of the court and not yet subject to its section 602 jurisdiction. That suggestion implicates a larger determination the juvenile court did not actually make. Thus we reject any contention that the juvenile court has done more than make a ruling on who shall have custody of Jaime M. for the time being. As the public defender points out, cases in which the jurisdiction of both section 300 and section 602 may apply require the juvenile court to decide which type of jurisdiction it will exercise. Section 241.1 provides that when a minor appears to come within the description of both sections, the county welfare department and the county probation department must make a joint recommendation of which status will best serve the interests of the minor and of society. That finding is reported to the court, and the court must then decide which status is appropriate for the minor. (§ 241.1, subd. (a).) Where the potential for dual jurisdiction arises because a second petition is filed regarding a minor already within the juvenile court's jurisdiction, the court presented with the second petition shall make the necessary determination. (*In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1013 [87 Cal.Rptr.2d 84].)

The decision in *In re Marcus G.* is instructive. Marcus G. had been declared a dependent of the juvenile court under section 300 when he was four months old. (*In re Marcus G., supra,* 73 Cal.App.4th at p. 1010.) When Marcus G. was age 15, he was arrested for robbery and was later declared to be a ward of the court under section 602. (73 Cal.App.4th at pp. 1010-1011.) When the court monitoring his dependency learned of this, it granted a motion by the county welfare department to terminate the dependency proceeding in favor of the delinquency proceeding, reasoning that a minor cannot simultaneously be a ward of the court under both section 300 and section 602. (73 Cal.App.4th at p. 1011.) The *In re Marcus G.* court reversed. It noted there was no indication in the record that the procedures of section 241.1 had been followed. There was no evidence that the required joint recommendation from the welfare and probation departments had been presented to the delinquency court. (73 Cal.App.4th at p. 1013.) More importantly, there was no indication that the delinquency court had made any decision as to how Marcus G. should be treated, as a dependent of the court or a ward of the court under section 602. (73 Cal.App.4th at p. 1014.) The matter was remanded to the juvenile court, with instructions to determine whether the procedures of section 241.1 were followed, and to dismiss the dependency proceeding only if there had been a finding Marcus G. should be treated as a ward of the court rather than a dependent. If section 241.1 had not been followed, then a determination would have to be made as to Marcus G.'s status. (73 Cal.App.4th at p. 1017.) In other words, a specific

decision is required from the court as to which type of jurisdiction it will exercise over a minor. Even where the court has actually adjudicated a minor to be a ward of the delinquency court, dependency proceedings may not be dismissed absent such a finding. Merely referring to an earlier adjudication is not enough.

Here, the superior court file indicates the court has not yet made a determination of how Jaime M. should be treated. A section 241.1 report was submitted to the court on May 4, 1999, notably unsigned by the social workers assigned to Jaime M.'s dependency case. Since that time, the court has continued the matter for input from countless experts and treatment facilities who have evaluated Jaime M., but has not determined what her status will be. As late as November 30, 2000, the court declined an opportunity to determine Jaime M.'s status, denying without prejudice a motion brought under section 241.1 to dismiss the pending section 602 petition and leave Jaime M. in dependency. Rather, the court is awaiting an indication from the mental health department of the superior court as to how to coordinate services and whether it will take the lead in that determination. Thus, despite the public defender's suggestion, the question whether Jaime M. shall be treated as a dependent of the court or a ward of the court remains. As *In re Marcus G.* demonstrates, such a decision must be made clearly and carefully. A determination as important as Jaime M.'s status before the court cannot be implied from a few statements made during an ex parte hearing on placement.

That determination must be made, however, and quickly. While the superior court's solicitation of additional input on appropriate treatment of Jaime M. was commendable initially, the ultimate result has been to leave Jaime M. housed untreated in juvenile hall for 21 months. During argument on the ex parte motion, the trial court itself noted that her condition is deteriorating. The situation demands a resolution. Within 15 days of the filing of this opinion, an updated section 241.1 report shall be prepared and filed recommending an appropriate status for Jaime M. Within 20 days of the report's filing, the juvenile court shall hold a hearing on the matter and make a prompt determination of Jaime M.'s status pursuant to section 241.1. Depending on the outcome of that determination, either the dependency court or the delinquency court shall then settle her placement as soon as practicably possible thereafter.

### DISPOSITION

The petition for writ of mandate is granted. The juvenile court is ordered to proceed with a determination of Jaime M.'s status before the court in

accordance with this opinion. The stay of the orders entered December 4, 2000, and December 12, 2000, is dissolved.

Grignon, Acting P. J., and Weisman, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied April 18, 2001.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.