Filed 12/16/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re RAY M., a Person Coming Under the Juvenile Court Law. | |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAY M.,<br><br>    Appellant. | D070157<br><br>(Super. Ct. No. JJP02715) |
| In re RAY M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAY M.,<br><br>    Defendant and Appellant. | D070174<br><br>(Super. Ct. No. JJL26173) |

CONSOLIDATED APPEALS from orders of the Superior Court of Imperial County, William Derek Quan, Judge and Juan Ulloa, Judge. Reversed and remanded with directions.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant, a minor.

Katherine Turner, County Counsel, Haislip W. Hayes and Laura Berumen, Deputy County Counsel, for Plaintiff and Respondent Imperial County Department of Social Services (D070157).

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Julie L. Garland, Peter Quon, Jr. and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent the People (D070174).

Ray M. appeals orders of the Imperial County juvenile court denying his motion to conduct a new assessment under Welfare and Institutions Code section 241.1[1] and declaring him a delinquent ward under section 602. Ray filed his motion after the Kern County juvenile court determined he should be deemed a ward, and not a dependent, without providing notice to his dependency attorney or to the Imperial County court as required by section 241.1 and California Rules of Court, rule 5.512.[2] Ray also contends, and the Imperial County Department of Social Services (Department) concedes, that the juvenile court erred at the outset of the dependency by failing to provide notice as

---

[1]      Undesignated statutory references are to the Welfare and Institutions Code.

[2]      All rule references are to the California Rules of Court.

required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  We agree with Ray that because the Kern County juvenile court did not comply with the notice requirements set forth in section 241.1 and rule 5.512, the Imperial County juvenile court had the authority to revisit the Kern County court's assessment under section 241.1.  Accordingly, we reverse the orders and remand the case for the juvenile court assigned to hear Ray's dependency matter to conduct a new assessment under section 241.1 and, if Ray is deemed a dependent, to comply with the notice provisions of ICWA.

### FACTUAL AND PROCEDURAL BACKGROUND

Ray, his older brother David M., and their two younger half-siblings were removed from the custody of their mother, Teresa P., in November 2012, after she was arrested for disturbing the peace and child endangerment.  The police were called by neighbors because of loud music coming from the home during the early hours of the morning.  When the police arrived, they found Teresa intoxicated and belligerent.  The home was filled with trash and the social workers called to the scene described it as deplorable.  Teresa was arrested and the four minors were taken into protective custody.

The Department filed petitions under section 300 on behalf of Ray and David, alleging they were at substantial risk of suffering serious physical harm or illness as a result of Teresa's inability to protect them.[3]  At the time, Ray was 12 years old and David was 15.  Teresa had a long history of involvement with the Department related to allegations of neglect and also had several prior criminal convictions.  Teresa had

---

[3]     Shortly after their removal, Ray's half-siblings were placed with their father. Neither they nor David are the subject of this appeal.

3

participated in a voluntary family maintenance case with the Department from August 2011 to August 2012, and during that time received mental health counseling and substance abuse services. After the minors were taken into custody, however, Teresa became completely uncooperative with the Department.

At the detention hearing, the juvenile court found the Department had made a prima facie showing that Ray and David were minors described under section 300 and ordered them detained. After being taken into protective custody Ray and David both tested positive for methamphetamine and the Department amended the petitions to include the positive drug tests. At a hearing on the amended petition the following month, the court again found the Department had made a prima facie showing that the minors were described by section 300. At the hearing, the minors' father made his first appearance. He requested placement of the minors and also stated he might have Cherokee heritage. By January, however, he lost contact with the Department and failed to return numerous telephone calls from the family's social workers.

Before the contested jurisdiction and disposition hearing in February 2013, Ray and David were placed in separate foster homes. The Court Appointed Special Advocate (CASA) for the minors reported that Ray disclosed to her that Teresa had subjected him to severe physical abuse. At the hearing, the court declared Ray and David dependents and removed them from parental custody. The court ordered reunification for both parents and continued the minors' foster placements. The following month, Ray and David's maternal uncle, Omar P. and his wife, Bianca P., who resided in Arizona, requested placement of the minors. The Department requested and received an order

4

from the juvenile court for an evaluation of Omar and Bianca's home under the Interstate Compact for the Placement of Children (ICPC) (Fam. Code, § 7900 et seq.). Ray and David were placed with Omar and Bianca in Arizona the following June.

For the six-month review hearing, the Department reported that Teresa had failed to participate in any reunification services. The Department requested that services be terminated before the 12-month review hearing and that the court set a permanency planning hearing under section 366.26. The social worker assigned to the case stated Teresa wanted to regain custody of the minors, but steadfastly refused to cooperate with the Department or to visit with Ray and David under the Department's supervision. Ray had started attending therapy on a weekly basis and had disclosed further details about the physical abuse he and his siblings had suffered while in Teresa's care. Ray told the therapist that Teresa beat them with belts, pipes, wires, and burned them with metal utensils. At the time of the six-month review hearing, Ray and David were both doing poorly in school, and Ray had been suspended from school several times for fighting.

The minors' counsel joined in the Department's request to terminate reunification services and set a permanency planning hearing. After a contested hearing in August 2013, the juvenile court terminated both parents' services and set a permanency planning hearing for December 2013. Thereafter, Ray continued to struggle academically and with anger issues. He was diagnosed with attention deficient and hyperactivity disorder and prescribed medication. In its report for the permanency planning hearing, the Department stated that Omar and Bianca, who remained the minors' caretakers, loved them and wanted to continue to care for them, but were not willing to consider adoption because of

5

the financial commitment it entailed. The Department also reported that the ICPC request for a foster care license had been closed because Omar and Bianca had not provided requested documentation. At the permanency planning hearing, the juvenile court ordered the minors to continue their placement with Omar and Bianca, and set a subsequent review hearing under section 366.3.

Before the next hearing, Omar and Bianca notified the Department that they were no longer willing to continue to care for Ray and David because they required constant supervision and were impacting their ability to care for their own two children. In February 2014, the minors were placed in a group home in San Diego, California. Once at the group home, Ray began experimenting with drugs and alcohol, engaged in aggressive behavior toward David, and also fell in with other residents who were affiliated with a local gang. As a result, in June 2014, Ray was moved to another group home in nearby La Mesa. There, however, Ray continued to use drugs, ran away several times and exhibited aggressive and disruptive behavior. After an episode in which Ray attacked another group home resident, he was moved again to a group home in Mentone, California in San Bernardino County.

While in Mentone, on December 19, 2014, Ray was arrested for robbing a convenience store with two other individuals. The San Bernardino County District Attorney filed a petition alleging Ray was within the jurisdiction of the juvenile court under section 602. The matter was transferred to Imperial County. The probation department in Imperial County, with the agreement of the Department, submitted a report under section 241.1 recommending that Ray be designated a ward of the juvenile court

6

under section 602, rather than a dependent under section 300.  The report stated that Ray had been suspended from the middle school he was attending multiple times since his placement in Mentone, was failing all of his classes, admitted to regular drug and alcohol use, and was associating with gang members.  In January 2015, the Department also submitted a proposal for Ray to remain a dependent but to enter an intensive, structured program in Michigan where he would receive individual and group therapy, alcohol and drug treatment, medication support and anger management services.

At the March 10, 2015 hearing on the section 241.1 assessment report to determine Ray's status, Ray's attorney, James Smith, argued he should remain a dependent.  Smith asserted the Department had not adequately dealt with the underlying trauma Ray had suffered in Teresa's care.  The juvenile court agreed.  The court found Ray's interests were best served by remaining a dependent and being provided with additional services through the dependency system.  The parties agreed at the hearing that the Department would pursue the placement in Michigan and start the ICPC process.  Because of Ray's behavior, however, finding an immediate placement was difficult.  Once released from juvenile hall, he was placed in another group home but then removed several days later after punching another resident.  Thereafter, he was placed in another group home in San Diego.

In its report for a section 366.3 review hearing in July 2015, the Department indicated Ray's current placement was in jeopardy.  Ray continued to act out aggressively.  In August 2015, the Department again recommended that the court order

7

Ray placed at the program in Michigan, and in September the juvenile court specifically ordered the Department to start the ICPC process for that placement.

The record is sparse from September 2015 to January 2016. Ray was eventually moved to the Tehachapi Mountain Boys Home in Kern County. Then, on January 21, 2016, he was arrested for brandishing a knife at another resident of the home. On January 25, 2016, the Kern County district attorney filed a petition on Ray's behalf alleging he was within the jurisdiction of the juvenile court under section 602. The following day, January 26, 2016, the Kern County juvenile court conducted a delinquency detention hearing. After appointing public defender Stephen J. Adelson as counsel for Ray, the court found detention was necessary and set a hearing for a joint assessment under section 241.1.

The following day, January 27, 2016, a review hearing under section 366.3 was scheduled in Ray's dependency case. At the hearing, the court noted it had not received a report from the Department for Ray. The Department requested a continuance and Ray's counsel, Smith, stated that he was "told by the social worker that Ray got into some trouble in Bakersfield" and that he knew things were "in flux" as a result and, therefore, he did not oppose a continuance. The court continued the hearing to February 22, 2016.

On February 2, 2016, a report titled "WIC 241.1 Joint Assessment Notification to the Court" and signed by a representative of the Kern County Probation Department was filed with the Kern County juvenile court recommending wardship for Ray. The report stated that Ray's case "was reviewed and assessed by Joel Walton and Steven Webdell of the Kern County Probation Department and by Esther Martinez of the Imperial County

Department of Children and Family Services."[4]  The four-page report recounted Ray's arrest and contained a brief history of his dependency in Imperial County.  The report also stated that Adelson was asked to provide input and recommended dependency.[5]

On February 5, 2016, the Kern County juvenile court conducted a hearing on the assessment report and found that proceeding under the delinquency provisions would best serve the interest of Ray and the protection of society.  At the contested jurisdiction hearing on February 16, 2016, the Kern County juvenile court heard the testimony of the victim, a facility manager at the Tehachapi Mountain Boys Home, and Ray.  At the conclusion of the hearing, the court found the allegations contained in the district attorney's petition true, then ordered the case transferred to Imperial County for disposition.

On February 18, 2016, the Department submitted a status review report to the Imperial County juvenile court in Ray's dependency proceeding stating that Ray had been arrested in Kern County and adjudged a ward of the court by the Kern County juvenile court.  The report stated that Ray's delinquency matter in Kern County was pending transfer to Imperial County and that Ray would soon be transported from the Kern County juvenile hall to the Imperial County juvenile hall.  The report stated that Ray was

---

4    The first page of the report also stated "Ray [M.] has been assessed by the Kern County Probation Department and the Kern County Department of Human Services."

5    The report contains no explanation of Adelson's recommendation, stating only Adelson "was asked to provide his input regarding whether he felt Dependency or Wardship was in the best interest of the minor.  He felt it was in the minor's best interest to remain a dependent."

no longer eligible to be supervised under section 300 and recounted Ray's history of difficult behavior. The Department recommended the juvenile court issue an order terminating dependency jurisdiction and dismissing the proceeding.

At the continued February 22, 2016 review hearing in Ray's dependency proceeding, the Department's counsel stated the Department had been notified of Ray's delinquency matter in Kern County and had participated in the joint assessment report filed in that case. Department counsel also stated the section 241.1 hearing took place on February 5, 2016, and that the Department requested, but had not yet received, a copy of the minute order from that hearing. Smith alerted the court that notice of the determination made in Kern County under section 241.1 had not been provided to him as required by rule 5.512. The Imperial County juvenile court acknowledged the error, but posited that any issues with the section 241.1 hearing that occurred in Kern County needed to be addressed by that court and not it. On Smith's request, the court again continued the review hearing to March 14, 2016, to provide additional time to address the section 241.1 determination made in Kern County.

At the February 25, 2016 transfer-in hearing in Imperial County on Ray's delinquency petition, Ray's delinquency counsel objected to the transfer on the grounds that the section 241.1 protocol used in Kern County did not comply with the notice provision in rule 5.512(c).[6] The juvenile court overruled the objection and stated that the

---

[6] The transfer-in hearing was conducted by a different judicial officer, Honorable Juan Ulloa, than the judicial officer assigned to Ray's existing dependency proceeding, Honorable William D. Quan.

objection was best addressed either to the Kern County juvenile court or to the Court of Appeal. On March 8, 2016, the Imperial County juvenile court in the delinquency matter conducted a disposition hearing, declared Ray a ward of the court pursuant to section 602, and placed Ray in his maternal grandmother's home.

Prior to the disposition hearing in the Imperial County delinquency court, on March 4, 2016, Smith filed a "Motion To Reconsider or Redo Section 241.1 Hearing" in the dependency court. Smith argued the court should conduct a new section 241.1 hearing because notice had not been given to all of the required parties, including the Imperial County juvenile court itself, in the Kern County proceeding. Smith asserted the court had the authority under both section 385 and Code of Civil Procedure section 1008 to set aside the Kern County juvenile court's order.

At the March 14, 2016 hearing on Ray's motion, the Department's counsel stated his client's agreement with Ray's position that it was appropriate to rehear the section 241.1 determination. The juvenile court, however, did not agree that it had the authority to review the order of the Kern County juvenile court. Smith requested a one-week continuance to discuss the matter with Ray, which the court granted. Smith also stated that he had attempted to file a motion to reconsider in Kern County, but that the Kern County juvenile court had rejected the motion on the grounds that the case had been transferred to Imperial County and it no longer had jurisdiction.

At the continued hearing on March 21, 2016, Ray's dependency counsel reiterated his position that the Imperial County juvenile court had the authority to revisit the delinquency determination made by the Kern County court. The dependency court

11

disagreed, again stating that it did not believe it had authority to address the errors made by the Kern County court. The juvenile court suggested instead that any relief to correct those errors would have to be obtained through an appeal. The court also suggested that the motion would have been better addressed to the juvenile court department assigned to the delinquency matter. At the conclusion of the hearing, the court denied Ray's motion to reconsider the section 241.1 determination and, on the recommendation of the Department in its February 18, 2016 report, terminated dependency jurisdiction.

On April 15, 2016, Ray filed notices of appeal for both the delinquency court's March 8, 2016 order declaring him a delinquent ward and placing him with his maternal grandmother, and the dependency's court's March 21, 2016 order denying his petition to reconsider the Kern County court's determination under section 241.1 and terminating dependency jurisdiction.[7]

---

[7]    On Ray's motion before briefing, this court consolidated the appeals. After Ray filed his opening brief, it came to the court's attention that Ray had not served the Attorney General with the motion to consolidate. On our own motion, we vacated our earlier order consolidating the appeals. Because the legal issue raised by Ray is the same with respect to both challenged juvenile court orders, we ordered the cases consolidated again for purposes of this opinion.

DISCUSSION

I

Ray's central contention is that the Kern County juvenile court's failure to provide notice as required by section 241.1 and rule 5.512 requires reversal of the status determination made by that court to afford him the opportunity to be heard.[8]

A

"A child who has been abused or neglected falls within the juvenile court's protective jurisdiction under section 300 as a 'dependent' child of the court. In contrast, a juvenile court may take jurisdiction over a minor as a 'ward' of the court under section 602 when the child engages in criminal behavior." (*In re M.V.* (2014) 225 Cal.App.4th 1495, 1505.) In cases where a child qualifies as both a dependent and a ward of the juvenile court, section 241.1 sets forth the procedure the juvenile court must follow to determine under which framework the case should proceed. Generally, the child cannot be both a dependent and a ward of the court.[9] (See § 241.1, subd. (d) ["Except as

---

[8]     Ray does not challenge, and therefore we do not reach, the Kern County juvenile court's true finding on the allegations in the petition filed by the District Attorney after his arrest there. Ray also does not, contrary to the assertions made by both the Attorney General and the Department, directly challenge the sufficiency of the evidence supporting the status determination made in Kern County. His argument focuses solely on that court's failure to provide the requisite notice, which prevented his counsel from participating in the assessment determination. We take no position on the sufficiency of the evidence to support the Kern County juvenile court's status determination.

[9]     "[U]nder certain statutorily enumerated circumstances, the probation department and the child welfare department of a county, in consultation with the presiding judge of the juvenile court, may create a written protocol permitting a child to be 'dual status'— that is, both a dependent child and a ward of the court. (§ 241.1, subd. (e); see Assem.

13

provided in subdivision (e), this section shall not authorize the filing of a petition or petitions, or the entry of an order by the juvenile court, to make a minor simultaneously both a dependent child and a ward of the court."]; *In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1012 (*Marcus G.*).)

Under section 241.1, subdivision (a), when it appears a minor fits the criteria for both dependency under section 300 and wardship under section 601 or 602, "the county probation department and the child welfare services department shall . . . initially determine which status will serve the best interests of the minor and the protection of society." The provision calls for the recommendations of both departments to "be presented to the juvenile court with the petition that is filed on behalf of the minor" and for the court to "determine which status is appropriate for the minor." (Section 241.1, subd. (a).) The provision also states that "[a]ny other juvenile court having jurisdiction over the minor shall receive notice from the court, within five calendar days, of the presentation of the recommendations of the departments." (*Ibid.*) The notice must include "the name of the judge to whom, or the courtroom to which, the recommendations were presented." (*Ibid.*)

Subdivision (c) of section 241.1 addresses the situation presented here, when a minor under the jurisdiction of one county's juvenile court is later alleged to come under the jurisdiction of another county's juvenile court. The provision states: "Whenever a

Bill No. 129 (2003-2004 Reg. Sess.) § 1.)." (*In re M.V., supra*, 225 Cal.App.4th at p. 1506, fn. 3.) There is no indication in the record that such a protocol has been adopted in Imperial County or Kern County and that dual status was a possibility for Ray.

14

minor who is under the jurisdiction of the juvenile court of a county pursuant to Section 300, 601, or 602 is alleged to come within the description of Section 300, 601, or 602 *by another county*, the county probation department or child welfare services department in the county that has jurisdiction under Section 300, 601, or 602 and the county probation department or child welfare services department of the county alleging the minor to be within one of those sections shall initially determine which status will best serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court in which the petition is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor. . . . *Any other juvenile court having jurisdiction over the minor shall receive notice from the court in which the petition is filed within five calendar days of the presentation of the recommendations of the departments*. The notice shall include the name of the judge to whom, or the courtroom to which, the recommendations were presented."[10] (§ 241.1, subd. (c), italics added.)

When a minor comes within the description of both a delinquent ward and a dependent, subdivision (b) of the statute requires the "probation department and the child welfare services department in each county [to] jointly develop a written protocol to ensure appropriate local coordination in the assessment of a minor . . . and the

---

[10] In *Marcus G., supra*, 73 Cal.App.4th 1008 the Court of Appeal construed the statute, which is arguably imprecise as to whether the joint assessment is filed in the first court to have jurisdiction or the second, to "mean that the assessment of which status would be appropriate for the minor is to accompany the *later petition*, i.e., the petition that creates the potential for dual jurisdiction." (*Id*. at p. 1013.)

15

development of recommendations by these departments for consideration by the juvenile court." The protocol must require the "consideration of the nature of the referral, the age of the minor, the prior record of the minor's parents for child abuse, the prior record of the minor for out-of-control or delinquent behavior, the parents' cooperation with the minor's school, the minor's functioning at school, the nature of the minor's home environment, and the records of other agencies that have been involved with the minor and his or her family."[11] (§ 241.1, subd. (b)(2).)

The statutory mandate is "augmented by rule 5.512, which requires the joint assessment under section 241.1 to be memorialized in a written report." (*In re M.V., supra*, 225 Cal.App.4th at p. 1506.) In addition to the eight factors set forth in section 241.1, subdivision (b)(2) that must be considered in any joint assessment, "rule 5.512 demands evaluation of four additional items: (1) the history of any physical, sexual, or emotional abuse of the child; (2) any services or community agencies available to assist the child and his or her family; (3) a statement by any counsel currently representing the minor; and (4) a statement by any court appointed special advocate (CASA) currently appointed for the child. (Rule 5.512(d).)" (*Ibid.*)

The augmenting rule also addresses who is responsible for preparing the assessment if the proceedings involve different counties. It states, "[i]f the petition alleging jurisdiction is filed in one county and the child is already a dependent or ward in another county, a joint assessment must be conducted by the responsible departments of

---

[11] There is no indication in the record that Kern County has developed a specific protocol as contemplated by section 241.1.

16

each county. If the departments cannot agree on which will prepare the joint assessment report, then the department in the county where the petition is to be filed must prepare the joint assessment report." (Rule 5.512(c).) The same provision states that the "report must contain the recommendations and reasoning of both the child welfare and the probation departments" and "must be filed at least 5 calendar days before the hearing on the joint assessment in the county where the second petition alleging jurisdictional facts under sections 300, 601, or 602 has been filed." (*Ibid.*) Importantly here, the rule also requires that, "[a]t least 5 calendar days before the hearing [on the joint assessment], notice of the hearing and copies of the joint assessment report must be provided to the child, the child's parent or guardian, all attorneys of record, any CASA volunteer, and any other juvenile court having jurisdiction over the child." (Rule 5.512(f).)

With respect to the timing of the status determination required under section 241.1, the statute is silent. The rule, however, provides that the joint assessment "must be completed as soon as possible after the child comes to the attention of" the responsible child welfare and probation departments, and "[w]henever possible, the determination of status must be made before any petition concerning the child is filed." (Rule 5.512(a)(2).) Rule 5.512 also provides that if "the child is detained, the hearing on the joint assessment must occur as soon as possible after or concurrent with the detention hearing, but no later than 15 court days after the order of detention and before the jurisdictional hearing. If the child is not detained, the hearing on the joint assessment

17

must occur before the jurisdictional hearing and within 30 days of the date of the petition."[12] (Rule 5.512(e).)

This court reviews a "juvenile court's determination under section 241.1 for abuse of discretion." (*In re M.V., supra,* 225 Cal.App.4th at p. 1506.) " 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' " (*Ibid.*) "A discretionary order that is based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion, and is subject to reversal even though there may be substantial evidence to support that order." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1124-1125.)

B

The issue before us is whether the Imperial County juvenile court had the ability to remedy the Kern County juvenile court's failure to provide notice by revisiting the section 241.1 assessment. The Department does not dispute that the Imperial County juvenile court and the parties' attorneys did not receive the notice required by section 241.1 and rule 5.512(f). Rather, the Department contends the error was harmless because: (1) "all

---

[12] Another court recently pointed out that the timeframes set forth in the rule for the section 241.1 assessment are problematic because they call for the status determination to occur before "a determination that the jurisdictional allegations supporting the alternate status are true." (*In re M.V., supra*, 225 Cal.App.4th at p. 1507, fn. 4.) One commentator has noted that " '[s]ince the full nature of the delinquency allegations may not become clear until after they have been litigated and the juvenile court may or may not find those allegations true,' there may be 'substantial merit' to deferring the 241.1 determination until after the jurisdiction hearing in the appropriate case." (*Ibid.*, quoting Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013 ed.) § 1.11[3][b], p. 1-13.)

18

*parties* were noticed of the hearing and the minor was represented by counsel"; (2) Ray's newly appointed delinquency attorney in Kern County was afforded the opportunity to weigh in and recommended continued dependency; and (3) because the joint assessment report prepared by the Kern County probation department with input from the Department provided "a relatively complete picture of the minor's history of abuse and the services being provided to him as a dependent…."

These arguments are not persuasive. "In juvenile dependency litigation, due process focuses on the right to notice and the right to be heard." (*In re Matthew P.* (1999) 71 Cal.App.4th 841, 851.) Rule 5.512(f) explicitly requires that at least five calendar days before a hearing under section 241.1 is conducted, both notice of the hearing and copies of the joint assessment report "must be provided to the child, the child's parents or guardian, *all attorneys of record*, any CASA volunteer, and any other juvenile court having jurisdiction over the child." (Rule 5.512(f), italics added.) Further, the rule requires that "[a]ll parties and their attorneys" be provided "an opportunity to be heard at the hearing."[13] (Rule 5.512(g).)

Ray's dependency attorney, and the dependency court in Imperial County, had familiarity with Ray's long history in the dependency system that the public defender assigned to Ray's delinquency case in Kern County, just 10 days before the assessment hearing, did not. If properly noticed, Ray's attorney could have provided additional information concerning Ray's background, including the physical abuse he suffered and

---

[13]    Subdivision (d)(11) of the rule also requires the assessment report to contain "a statement by *any* counsel currently representing the minor . . . ." (Rule 5.512(d)(11).)

19

the complicated status of his ongoing dependency, that was not included in the joint assessment report submitted to the Kern County juvenile court. Because notice was not provided as required, Ray was effectively denied the opportunity to be heard on the issue of his status under section 241.1. This deficiency was not harmless; we cannot say beyond a reasonable doubt that the outcome of the status determination would not have been different with Ray's counsel participation. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183 [Errors in notice "are subject to the harmless beyond a reasonable doubt standard of prejudice."].)

## C

The Department next contends that even if the error was prejudicial, the Imperial County juvenile court correctly concluded it could not revisit the Kern County juvenile court's determination under section 241.1. Confusingly, the Department states that Ray's proper recourse was to challenge the Kern County court's status determination by filing an appeal from the subsequent dispositional hearing. Ray, however, did appeal from the dispositional order made by the delinquency court that accepted the case from Kern County, as well as from the order in the dependency court denying his request to revisit the section 241.1 hearing and dismissing the dependency matter.[14] These orders are appealable, and Ray's challenge to the earlier section 241.1 finding made by the Kern

---

[14]   We note unnecessary confusion in this case was created by the assignment of the delinquency matter transferred from the Kern County juvenile court to a different judicial officer than the one already presiding over Ray's dependency proceeding. When a case that is appropriate for treatment under section 241.1 arises, if it is possible the judicial officer to whom the first proceeding is assigned should also preside over any subsequent juvenile proceeding occurring in the same county.

County juvenile court is properly reviewed on appeal from the orders. (See *In re Henry S.* (2006) 140 Cal.App.4th 248, 256 [Juvenile court's finding treating minor "as a ward under section 600 was an interim order that affected his subsequent treatment by [the juvenile court]," which may be reviewed on appeal from the subsequent jurisdictional and dispositional judgment.].)

The Department asserts there is "no express statutory authority [or] case law to support [Ray's] assertion that the Imperial County juvenile courts had the authority to overturn Kern County[ juvenile court's s]ection 241.1 determination." The Department also suggests Ray should have brought a section 388 petition asking the juvenile court in his dependency proceeding to revisit the status determination, but contradicts that statement by asserting there "is no indication that a Section 388 motion would allow the dependency court to set aside an order by a delinquency court." In his reply brief, Ray responds by stating that although the Imperial County juvenile court found it "did not have the authority to police the Kern County courts," the department that accepted the transfer of the Kern County matter should have rejected the transfer until the Kern County court corrected the notice error.

The juvenile court's jurisdiction "is limited to hearing cases concerning delinquent and dependent children. The Legislature has vested the juvenile court with the authority to fashion orders concerning the welfare of a dependent or a delinquent child. (§§ 19, 202, 245.5; see §§ 300.2, 350, subd. (a).) Within its limited jurisdiction, the authority of the juvenile court is extensive: 'In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor

21

who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of or for the rehabilitation of the minor.' (§ 245.5.)" *(Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111 *(Nickolas F.*).) In addition, "[a]ll courts have inherent powers that enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from California Constitution, article VI, section 1, and are not dependent on statute." *(Id.* at p. 110.)

Section 385, which governs modifications of orders in dependency proceedings, and section 775, which governs the same in delinquency matters, explicitly give the juvenile court the authority to modify prior orders. Those provisions both state: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."[15] (§§ 385, 775.) This court's opinion in *Nickolas F.* is instructive. There, we held that a juvenile court had the authority to modify a prior order providing for reunification services for the father of a

_____

[15] Section 262 provides additional authority for the modification of a prior order by a juvenile court. That provision states: "Upon motion of the minor or his or her parent or guardian for good cause, or upon his or her own motion, a judge of the juvenile court may set aside or modify any order of a juvenile hearing officer, or may order or himself or herself conduct a rehearing. If the minor or parent or guardian has made a motion that the judge set aside or modify the order or has applied for a rehearing, and the judge has not set aside or modified the order or ordered or conducted a rehearing within 10 days after the date of the order, the motion or application shall be deemed denied as of the expiration of that period." (§ 262.)

22

dependent minor without following the procedural requirements for a modification petition under section 388. (*Nickolas F., supra*, 144 Cal.App.4th at p. 116.)

The appellant in *Nickolas F.* argued that section 385's language "subject to such procedural requirements as are imposed by this article" limited reconsideration of a prior order to only situations where "a party or interested person has filed a petition for modification pursuant to section 388." (*Nickolas F., supra*, 144 Cal.App.4th at p. 112.) We rejected this assertion, noting "section 388 applies only when a *party* petitions the court for modification *based on new evidence or changed circumstances*" and holding the juvenile court has authority to reconsider previous orders in situations where section 388 does not apply. (*Id*. at pp. 113-114, second italics added.) In rejecting the limitation advanced by the appellant, we stated such an interpretation "would significantly diminish the juvenile court's general authority to ensure the orderly administration of justice, and would undermine the court's statutory authority to direct such orders as the court 'deems necessary and proper for the best interests' of the [minor]." (*Id*. at pp. 114-115.) Likewise, precluding the juvenile court from correcting the error here because it occurred in Kern County, and not in Imperial County, undermined the juvenile court's ability to ensure the orderly administration of justice in this case.[16]

The Department points to no countervailing legal authority, statutory or otherwise, to support its contention that the juvenile court was precluded from reconsidering the

---

16    In cases like this, where a minor under the dependency jurisdiction of one county's juvenile court commits a crime in another county, the juvenile courts should communicate and work cooperatively to fulfil the requirements of section 241.1 and rule 5.512 in order to prevent errors like one that occurred here.

23

section 241.1 status determination. Instead, the Department contends three general policy considerations precluded the Imperial County juvenile court from revisiting the section 241.1 determination. First, it asserts that allowing the Imperial County juvenile court to review the Kern County court's determination for legal sufficiency would usurp the role of the Court of Appeal. Next, the Department argues that allowing a new section 241.1 hearing would create a situation where there would be conflicting orders as to the minor's status. Third, it argues allowing another hearing would result in unnecessary delay in the final disposition, which conflicts with the overriding policy of prompt resolution of both dependency and delinquency matters.

We recognize the importance of the general policy interests identified by the Department, but conclude they did not warrant approval of the error made in Kern County by the juvenile court in Imperial County. Indeed, allowing the juvenile court to correct this error, which was explicitly acknowledged by the Department, serves the policy of ensuring prompt resolution of juvenile cases by speeding the resolution of the case without the significant delay created by this appeal. (See, e.g., *Los Angeles County Dept. of Children and Family Services v. Superior Court* (2001) 87 Cal.App.4th 320, 326 [recognizing the importance of resolving status determinations quickly].) Further, there is no risk of a conflicting order. The Imperial County juvenile court has the authority to revisit the section 241.1 assessment and make the determination anew. If the Imperial County juvenile court reaches a different conclusion than the one reached by the Kern County juvenile court, it does so properly with the participation of Ray's dependency counsel. Finally, we do not agree with the Department's criticism that allowing the

24

Imperial County juvenile court to revisit the section 241.1 determination usurps the function of this court. To the contrary, allowing the juvenile court to revisit the prior order and remedy the acknowledged error promotes efficiency and prevents judicial waste.

Because of the procedural posture of Ray's delinquency case, which was transferred to Imperial County before Ray's dependency counsel was notified of the Kern County juvenile court's status determination, Ray's attempt to challenge the order in the Kern County juvenile court was rejected. As soon as Ray's counsel learned of the status determination, he raised the error in both the delinquency and dependency courts in Imperial County. In this unusual situation, we conclude the juvenile court had the authority both under the Welfare and Institutions Code and article VI, section 1 of the California Constitution to rectify the acknowledged error that occurred before the case was transferred to Imperial County. (*Nickolas F., supra,* 144 Cal.App.4th at p. 110.) As discussed, we reject the Department's contention that the error made in Kern County was harmless, and conclude that because the notice provisions of section 241.1 and rule 5.512 were not followed, the Imperial County juvenile court was authorized to revisit the section 241.1 assessment to allow the participation of Ray's dependency counsel. For these reasons, the orders challenged by Ray in this appeal are reversed and the matter is remanded for the juvenile court assigned to Ray's dependency matter to conduct a new assessment under section 241.1.

Ray also asserts the notification requirements of ICWA were not satisfied in his case. The juvenile court and social worker have an affirmative and continuing duty in all dependency proceedings to inquire whether a dependent child is, or may be, an Indian child. (§ 224.3, subd. (a).) The circumstances that may provide reason to know the child is an Indian child include when a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe, or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of the tribe. (*Id*. at subd. (b).) A social worker who knows or has reason to know that the child is an Indian child is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members, to gather the information required for notice. (*Id*. at subd. (c); *In re A.G.* (2012) 204 Cal.App.4th 1390, 1396-1397.)

Ray asserts that ICWA's notice requirement was not met and that reversal to remedy that error is required. The record shows, and the Department concedes, that despite Ray's father's statement that he might have Cherokee heritage, the Department made no further inquiry regarding Ray's possible Indian status. As the Department concedes, remand is necessary to effect and document proper inquiry under ICWA. (*In re J.N.* (2006) 138 Cal.App.4th 450, 461-462.) In the event that the juvenile court determines Ray's status should be that of a dependent, and not a delinquent ward, the

juvenile court is directed to order the Department to conduct the requisite ICWA inquiry and to provide notice accordingly.

## DISPOSITION

We reverse the juvenile court orders entered on March 8, 2016, declaring Ray a ward of the court, and on March 21, 2016, denying Ray's request to conduct an assessment under section 241.1 and terminating dependency jurisdiction. The case is remanded for the juvenile court assigned to Ray's dependency matter to conduct a hearing under section 241.1 with the participation of all parties and their counsel as required by section 241.1 and rule 5.512. If the juvenile court determines Ray's status should be as a dependent and not a ward, the court is also ordered to direct the Department to conduct an ICWA inquiry, to provide ICWA notice to the Cherokee tribe, and to otherwise proceed in conformance with ICWA.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

27