Filed 5/18/23  In re A.S. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B321719 (Super. Ct. No. 18JD-00386) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>    Defendant and Appellant. | |

     S.R. (Mother) appeals the termination of her parental rights pursuant to Welfare and Institutions Code[1] section 366.26. We affirm.

---

    [1] All statutory references are to the Welfare and Institutions Code.

FACTS

Mother has three children, Johana, Juan (also known as David), and Andrea.  In February 2019, the San Luis Obispo County Department of Social Services (the Department) received a report that Andrea had been sexually molested by two male friends of Mother.  At the time of the report, Andrea was five years old, and Juan was 12 years old.  Their older sister Johana no longer lived in the home.  The Department placed Andrea in protective custody.  Juan remained with Mother.

The juvenile court confirmed the removal of Andrea from Mother's custody and ordered Mother to participate in family reunification services.  The court authorized Mother to have weekly supervised visits with Andrea.

*Six-Month, 12-Month, and 18-Month Reviews*

Andrea did well in foster care and felt safe in her placement.  At the six-month review, she said she was afraid of the "bad men" who touched her.  She did not tell Mother about her fear because she thought Mother would hit her.

Mother was willing to participate in reunification services.  But she had difficulty understanding the extent Andrea had been abused and taking responsibility for the protection of her children.

After the 12-month review, Andrea expressed concerns about returning to visits at Mother's home because she was afraid a "bad guy" might be there.  When Mother learned of the concerns, she told Andrea not to tell the social workers because that would end the visits.  Andrea continued to express concerns about long visits to Mother's home.  Andrea was afraid Mother might hit her if she expressed her concerns.

In the supportive environment of family therapy, Andrea was able to tell Mother about the abuse and trauma she suffered. Mother assured her that she could speak openly to trusted adults about her concerns. Andrea began to feel comfortable enough to spend some nights at Mother's home. Mother assured Andrea that she would keep her safe. Mother demonstrated her commitment by not allowing others in the home while Andrea was there.

At the 18-month review, the juvenile court returned Andrea to Mother's custody, authorized maintenance services and set a status review hearing.

*New Abuse*

Shortly before the status review hearing, Andrea and Juan told Andrea's foster parents that they were afraid of Mother because she had been yelling and throwing household objects at them. Mother hit Juan on his arms, stomach, and back, and she hit Andrea on the head with a book.

In an interview Andrea and Juan confirmed that the abuse was continuing. Mother would yell and hit Juan with a closed fist. This happened a few times a week. The children were hesitant to disclose the abuse because they were afraid of how Mother would react and that they would never see each other again. Andrea said she felt much safer at her foster parents' home because "they don't hit people like [her] mom [does]." When asked how she would feel if she did not return home, Andrea said she feared she would never see Juan again because Mother said so.

Mother initially denied the allegations. Later she admitted that she hit Juan on the arm and face. She said she hit Juan on the face only because he turned his head while she was hitting

3

him on the arm.  Mother also admitted that she told both children that they would not see each other if they were moved to another place.

The Department subsequently placed both Andrea and Juan with Andrea's foster parents.

*Section 387 Petition and Hearing*

The Department filed a supplemental petition under section 387 to remove Andrea and Juan from Mother's custody.

At the contested hearing Mother testified that she threw an empty water bottle at Juan and hit him on the arm because he would not do his chores.  Mother said that she hit Andrea on the head with a book by accident.  She apologized to the children and was willing to take a class on how to discipline her children and how to communicate with them.

The juvenile court found a substantial risk of detriment to each of the children if they were returned to Mother's custody.  The court terminated services as to Andrea and set the matter for a hearing to consider terminating parental rights pursuant to section 366.26.

*Continued Supervised Visitation*

After Andrea was returned to her foster parents, supervised visits with Mother continued.  Mother made most visits but missed a few because of car trouble.  Initially the visits went well, but as time went by Andrea became increasingly anxious.  On a number of occasions, Mother would not greet Andrea when they met at church.

During one visit Andrea asked Mother for some of her toys and clothes.  Mother replied that since Andrea was no longer living with her, she would give them away, throw them away, or burn them.  This made Andrea extremely upset.

4

After another visit, Andrea and Juan returned to their foster home upset and angry. Andrea said Mother ignored them and gave them dirty looks. Andrea said she would not continue the visits with Mother because they made her feel bad.

Andrea's foster parents have cared for her since she was five years old. She is now nine. Andrea wished to be a permanent member of her foster family. She felt loved and protected at her foster home. Andrea's foster parents want to adopt her.

*Consolidated Hearing on Sections 366.26 and 388*

Mother filed a petition pursuant to section 388 to set aside the prior order. The juvenile court consolidated the hearing on the section 388 petition with the section 366.26 hearing.

Mother testified that she loved Andrea, and that Andrea showed that she loved Mother when they ran into each other at a store. According to Mother, Andrea hugged her, began to cry, and kissed her all over her face, saying that she loved Mother a lot.

Andrea had a different view of her encounter with Mother at the store. Andrea was very upset because Mother was all dressed up, had makeup on, and was with a man whom Andrea assumed was Mother's boyfriend.

On cross-examination, Mother admitted that she did not provide an explanation when her children asked why she was not calling them. Mother said she did not greet Andrea at church because she felt sad. Mother also admitted that she sometimes tried to make her children feel sad by sending them text messages.

Robyn Yakush, Andrea's social worker, testified that continuing reunification services would not be in Andrea's best

interest because it would delay permanent placement. Yakush opined that Andrea did not have a positive parent-child relationship with Mother; Mother could not safely parent Andrea; and it would not be in Andrea's best interest to be returned to Mother.

<em>Ruling</em>

The juvenile court found that Mother could not provide Andrea with the stability and safety she needed and concluded that Andrea would not benefit from the continuation of a relationship with Mother. The court denied Mother's section 388 petition and terminated her parental rights.

DISCUSSION

<em>I. Standard of Review</em>

If the juvenile court finds by clear and convincing evidence that the child is likely to be adopted, the court must terminate parental rights (§ 366.26, subd. (c)(1)) unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the circumstances enumerated in section 366.26, subdivision (c)(1)(B). One of those circumstances is, "The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (*Id*. at subd. (c)(1)(B)(i).)

The exception applies where a child cannot be in a parent's custody, but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful to the child. (*In re Caden C.* (2021) 11 Cal.5th 614, 630.) The parent has the burden of proving: 1) regular visitation; 2) a relationship with the parent, the continuation of which would benefit the child; and 3) termination of parental rights would be detrimental to the child.

6

(*Id*. at p. 631.)  We review the juvenile court's determination of facts under the substantial evidence standard; the court's ultimate decision that termination would be harmful is reviewed for an abuse of discretion.  (*Id*. at p. 630.)

Review under the substantial evidence standard requires that we look only to the evidence supporting the prevailing party.  (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.)  We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact.  (*Ibid*.)  Where the trier of fact or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable.  (*McIntyre v. Doe & Roe* (1954) 125 Cal.App.2d 285, 287.)  The trier of fact is not required to believe even uncontradicted testimony.  (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

Under the abuse of discretion standard Mother must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious, or patently absurd manner.  (*In re Ray M.* (2016) 6 Cal.App.5th 1038, 1050-1051.)

*II. Exception to Adoption*[2]

Mother contends the juvenile court erred in failing to apply the section 366.26, subdivision (c)(1)(B)(i), benefit from a continuing relationship, exception.

As to the first element, the juvenile court found that Mother's visitation with Andrea was mostly consistent.  But Mother failed to carry her burden of proof on the other two elements: continuation of the relationship would benefit the

---

[2] On appeal Mother does not challenge the denial of her section 388 petition.

7

child, and termination of the relationship would be detrimental to the child.

Mother points out that at the beginning of the case Andrea enjoyed visits with Mother, but was not willing to return to the home where she had been molested. Mother claims that at the end of the case Andrea had conflicted feelings. She wanted to remain in her foster parents' home but did not want to hurt Mother's feelings.

Mother allows herself a very generous view of the evidence. In fact, the evidence shows that at the end of the case, Andrea did not have conflicted feelings. She did not want to continue visits with Mother and instead wanted to be adopted.

Mother argues that Andrea spent the majority of her life with her. Mother points out that Andrea lived six years with her before she was detained. In the middle of the case, Andrea was returned to Mother for six months. Andrea turned nine two months before the section 366.26 hearing. Thus, Andrea spent less than three years living with her foster parents.

What Mother's argument fails to acknowledge is that during the first six years Andrea was in Mother's care, Andrea was sexually molested by two men. During the six months Andrea was returned to Mother's custody, Mother physically and psychologically abused her. Even after Andrea was again removed from Mother's custody, Mother continued the psychological abuse. Much of the abuse occurred while Mother was being provided with services designed to prevent the abuse. Obviously Mother could not or would not incorporate the lessons into her parenting.

Mother attempts to make much of a single occurrence in which she claims Andrea hugged her, began to cry, kissed her all over her face, saying that she loved Mother a lot.

But the juvenile court was not required to believe Mother, and Andrea had a different view of the encounter. Moreover, even if the encounter occurred as Mother described, it is insufficient to overcome years of abuse. The court is not required to find that there is no benefit to continuing a relationship with Mother. Instead, Mother must prove that severing the relationship would be detrimental to the child, even when balanced against the benefits of a new adoptive home. (*In re Caden C., supra*, 11 Cal.5th at p. 630.) Mother has failed to carry her burden of proof.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

9

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, Daniel Solish, Deputy County Counsel, for Plaintiff and Respondent.